**Emmaline WILLIAMS, Petitioner–Appellee,**

v.

**Odie WASHINGTON, Warden, Respondent–Appellant.**

No. 94–3376.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1995.

Decided July 6, 1995.

Gary J. Ravitz (argued), Chicago, IL, for petitioner-appellee.

Steven J. Zick (argued), Office of Atty. Gen., Crim. Appeals Div., Chicago, IL, for respondent-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and WALTER, District Judge.*

CUDAHY, Circuit Judge.

Petitioner Emmaline Williams was convicted of indecent liberties with a child in 1986 and sentenced to twelve years in prison. After exhausting her state remedies, she petitioned the district court for habeas relief, asserting that she had been denied the effective assistance of counsel at her Illinois state court trial. The district court agreed with Emmaline Williams and granted her request for relief. We affirm.

## I.

In a joint bench trial in December 1986, Emmaline and Roy Williams were convicted of crimes stemming from the alleged sexual assault on their adopted daughter, Angela. The facts underlying the convictions suggest-

* The Honorable Donald E. Walter, District Judge for the Western District of Louisiana, sitting by designation.

ed that Angela, thirteen at the time of the alleged offenses, was raped by Roy and sexually molested by both Roy and Emmaline. Following the bench trial, the state court sentenced Roy to 19 years in prison for rape, and sentenced Emmaline to a 12–year term for indecent liberties with a child.

Both Emmaline and her husband were represented at the bench trial by attorney Lincoln T. Beauchamp. The proceeding was a rather brief affair. The only persons testifying were Angela, a Chicago police officer, Emmaline and her husband. The State presented the only physical evidence, which consisted of a letter written by Angela describing the assault and Roy's post-arrest confession.

Angela testified that she had been adopted by Roy and Emmaline in 1983, when she was eleven years old. After her adoption, she lived in Roy's and Emmaline's Chicago home with their natural daughter Tanya and several other foster children. She testified that when she was thirteen, early in 1984, her adoptive father Roy raped her, and both Roy and Emmaline sexually molested her. She recounted telling Tanya, then nineteen, of the incident, but suggested that Tanya did not believe her. She further stated that she drafted, but failed to mail, a letter describing the incident approximately two weeks after it occurred. In June 1985, she fled to the home of her former foster mother after an argument with Emmaline. She claimed that her departure was prompted by a beating and a second attempted molestation. She told her former foster mother of the alleged rape and molestation. This woman alerted the Illinois Department of Children and Family Services (DCFS), which notified the police.

Chicago police officer Joseph Lux interviewed and arrested Roy and Emmaline on June 17, 1985. He testified that at the station, he obtained a confession from Roy implicating both himself and Emmaline. The confession had been typed and prepared by Officer Lux and an assistant state's attorney, and then later signed by Roy. Officer Lux suggested that Emmaline, when confronted with the fact that Roy had made a statement, suggested that it "must be so" if he said it.

Both Roy and Emmaline denied committing the acts of which they had been accused. They also denied making incriminating statements to the police and otherwise claimed that Roy's confession was not true. Roy suggested that he signed the statement when Officer Lux made threats and false promises of leniency, and Emmaline denied admitting anything to the police.

Aside from airing Roy's and Emmaline's denials, Beauchamp did not call any witnesses or produce any evidence. He did not put on character witnesses in favor of Roy and Emmaline, despite the existence of DCFS's well-documented files, which apparently contained assessments of their fitness as parents. He did not call witnesses who would have cast doubt on Angela's reputation for truthfulness, though her school files characterized her as "an inveterate liar" and suggested that she "had a problem telling the truth." *People v. Williams*, 182 Ill.App.3d 598, 131 Ill.Dec. 189, 215, 538 N.E.2d 564, 590 (1989) (Pincham, J., dissenting). He did not call Tanya to determine whether Angela had in fact mentioned the incident to her. He did not produce medical records indicating that the rape may not have taken place. He did not interview the other occupants of the home or of the apartment building, though none of them heard an outcry or other manifestation of the alleged struggle.

Beauchamp also failed to take any significant action either before or after trial. He did not move to discover any of the State's evidence. He did not file any pretrial motions. Although the State voluntarily provided him with a copy of Angela's letter, he did not read that letter prior to trial, and he was not even aware that he had a copy of the letter at trial. He did not object to the letter's admission or otherwise attempt to have it excluded; he only made an erroneous complaint that he had not been given a copy of it. He did not attempt to have Roy's confession excluded, or to limit its use to Roy. He failed to question the absence of testimony from the assistant state's attorney who helped prepare the confession. And he failed to inquire about why Emmaline's alleged admission had not been reduced to

writing. Finally, he did not seek to have Emmaline's trial severed from that of Roy.

Emmaline asserted an ineffective assistance claim in state court, and otherwise appealed her conviction. The Illinois Appellate Court rejected her request for relief. *People v. Williams,* 182 Ill.App.3d 598, 131 Ill.Dec. 189, 538 N.E.2d 564 (1989). So did the Illinois Supreme Court. *People v. Williams,* 139 Ill.2d 1, 150 Ill.Dec. 544, 563 N.E.2d 431 (1990). The federal district court, however, determined that the assistance that Beauchamp provided was so ineffective as to violate the Sixth Amendment under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States ex rel. Williams v. Washington,* 863 F.Supp. 697 (N.D.Ill.1994). The district court therefore issued Emmaline's requested writ of habeas corpus.[1]

The State appeals. It first suggests that the district court erroneously relied upon evidence precluded from habeas review. Second, the State claims that the district court applied an overly expansive interpretation of *Strickland.* We agree with the district court's determination and therefore affirm.

## II.

The State's primary complaint on appeal is one of procedural default. It asserts that in reaching its decision, the district court erroneously relied upon materials that Emmaline failed to make available to the state court.

■ It is true that a habeas petitioner is required to "fairly present" her federal constitutional claims to the state courts before a federal court may review those claims. *Armstrong v. Young,* 34 F.3d 421, 425 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1369, 131 L.Ed.2d 224 (1995); *Verdin v. O'Leary,* 972 F.2d 1467, 1472 (7th Cir.1992). Fair presentation contemplates that "both the operative facts and the 'controlling legal principles' must be submitted" to the state court. *Verdin,* 972 F.2d at 1474 (quoting *Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct.

509, 513, 30 L.Ed.2d 438 (1971)). A failure in this regard restricts the materials that a federal court may consider during collateral review of the state court action. In applying this rule, however, federal courts should take care to "avoid hypertechnicality." *Verdin,* 972 F.2d at 1474.

■ There is no question here that Emmaline preserved her constitutional challenge of ineffective assistance of counsel. It is clear that she has diligently asserted this claim over the period of nine years during which her various appeals have been pending. Instead, the State suggests that the district court improperly relied upon certain evidentiary materials in reaching its decision. In particular, the State claims that the district court should not have considered 1) counsel's personal file; 2) the half-sheet indicating that no substantive motions had been filed on Emmaline's behalf; and 3) the allegation that Angela's letter might have been used for impeachment purposes.

■ The State is correct in asserting that the fair presentation rules require a petitioner to submit the "operative facts" to state courts. *See Burgin v. Broglin,* 900 F.2d 990, 996–97 (7th Cir.1990); *Armstrong,* 34 F.3d at 425. In light of this rule, the State suggests that we reverse the district court's determination. The State claims that neither counsel's file nor the half-sheet were presented to the state courts. Whether or not the State is correct concerning the absence of these materials before the state courts, its claim must fail. Our affirmance of the district court's grant of habeas relief does not depend upon the complained-of evidentiary sources. In addition, we do not agree that Emmaline failed to bring her complaint about counsel's failure to impeach Angela with the letter to the state court's attention.

Both the half-sheet and counsel's file contained information which was available to the state courts from other evidentiary sources. The half-sheet, for instance, merely documented counsel's failure to make any substantive motions on Emmaline's behalf. The

---

1. Roy also sought habeas relief, though with less success. The federal district court rejected his claim. *United States ex rel. Williams v. Peters,*

843 F.Supp. 427 (N.D.Ill.1994), and we denied probable cause to appeal. *Williams v. Peters,* No. 94–2168 (August 10, 1994).

State conceded at oral argument that a cursory examination of the trial court record would have made this lapse equally clear. The half-sheet was not, therefore, needed to determine that counsel failed to make pretrial motions to sever or to suppress or limit the use of either Roy's confession or Angela's letter. The state court, with or without the half-sheet, was well aware of counsel's omissions in this regard. *Williams,* 131 Ill.Dec. at 191–92, 538 N.E.2d at 566–67.

Counsel's file was similarly redundant. The district court found that the file was probative insofar as it contained *nothing* but billing documentation. 863 F.Supp. at 706. The file therefore constituted one piece of evidence that counsel had done absolutely nothing to prepare for the case. But the file was hardly the only evidence of this point. Counsel's failures were also apparent from Emmaline's testimony and from "a review of Beauchamp's performance before the trial court." *Id.*

Counsel's file, like the half-sheet, was not needed to document the matters upon which Emmaline's complaints had been based. Both the file and the half-sheet were therefore merely duplicative. Although the district court may have been procedurally barred from considering these pieces of evidence, this fact is irrelevant.[2] The facts of Emmaline's case that were represented in the file and the half sheet were otherwise contained in the state court record. The district court therefore had a right to pass on the claims which arose from these facts.

 With regard to Angela's letter, there is no problem of procedural default. The State suggests that Emmaline should be barred from complaining of counsel's failure to use this letter, once admitted, to impeach Angela because it asserts that she did not make this precise complaint in state court. Our view of the state court briefing, like that of the district court, suggests otherwise.[3] Emmaline's state court briefs clearly focused on counsel's ineffective assistance. Much of her complaint was devoted to counsel's lack of familiarity with Angela's letter; he was not even aware that the State had provided him with a copy of it. As a result of this lack of familiarity, he failed to do a number of things. First, he failed to object to the admission of the letter as hearsay not falling within a recognized exception. But second, once the letter had been admitted, he failed to use the letter to cross-examine Angela. Emmaline made *both* of these complaints in her state court briefing. She stated specifically:

> Counsel's ignorance of the letter was inexcusable—it had been in his possession for months before trial—and it *adversely affected his ability to effectively cross-examine Angela.*

R. 19, App. A at 28 (emphasis added).

> Defense counsel claimed surprise upon learning of the existence of Angela Williams' handwritten letter, although it was tendered to him at least six months before trial and was actually inside his file at the time. He never requested an opportunity to read the letter. *He did not cross-examine Angela about it.*

R. 19, App. B at 3 (emphasis added). These statements sufficiently apprised the state courts of Emmaline's complaints about coun-

---

**2.** The State also suggests in passing that the district court should not have relied upon medical reports demonstrating that Angela's hymen was still intact. Reference to these reports to support the district court's determination, like reference to the factual materials mentioned above, is unnecessary. Counsel's numerous failures at trial, discussed both by the district court and by us below, provide ample basis for sustaining Emmaline's claim of ineffective assistance. We note, however, that if the record in fact contained medical reports documenting an intact hymen, counsel's failure to discover them would be unreasonable. *See Foster v. A.L. Lockhart,* 9 F.3d 722, 726 (8th Cir.1993) (failure to uncover evidence of impotency in rape trial ineffective assistance).

**3.** The district court noted, 863 F.Supp. at 700 n. 1, and we note, that the state court opinions are somewhat ambiguous concerning the precise content of the claims presented. For that reason, like the district court, we rely upon Emmaline's state court briefs, R. 19, for our analysis. Doing so disposes of the State's complaint concerning cross-examination with the letter. It also disposes of the State's unsupported allegation that Emmaline has previously failed to suggest that counsel spent inadequate time preparing and interviewing for trial.

sel's performance. The district court was not prohibited from considering this matter.

In light of these conclusions, the State's attempt to assert a procedural bar to consideration of Emmaline's claim must fail. The record does not presently contain facts or allegations of which the state courts were unaware.

## III.

■ The State also argues, however, that counsel's performance was not so ineffective as to deprive Emmaline of her Sixth Amendment right. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test for determining whether a counsel's omissions and errors have deprived a criminal defendant of her Sixth Amendment right to counsel. First, a defendant must demonstrate that counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Review of this first prong contemplates deference to strategic decision-making and an evaluation of counsel's decisions from counsel's perspective at the time the decisions were made. *Id.* at 689–91, 104 S.Ct. at 2065–66. Consequently, courts engage in a strong presumption that counsel performed adequately.

■ The second prong of the test requires the defendant to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This test, however, does not merely question whether the outcome would have been different, but also looks at whether the result was fundamentally unfair or unreliable. *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). As we have previously stated, "*Strickland* requires us to focus, not upon whether counsel could have done a

better job, but upon whether counsel provided the assistance necessary to ensure the fundamental fairness of the proceeding whose result is being challenged." *Resnover v. Pearson,* 965 F.2d 1453, 1460 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993).

Therefore, to prevail under *Strickland,* Emmaline needed to establish both that counsel's performance was deficient and that unfair prejudice resulted from that deficiency. The district court determined that she had succeeded in both showings. The State takes issue with this determination. Its arguments are of two varieties. It first contests a number of the district court's conclusions that counsel's performance was deficient. Not deficient, in the State's view, are: counsel's failure to object to the admission of Angela's letter; counsel's failure to call or interview witnesses other than the defendants; counsel's failure to visit the scene of the alleged attack; counsel's failure to investigate the victim's reputation; and counsel's failure to prepare for trial. Second, the State asserts that the district court "completely omitted" the required prejudice analysis, and that in any event, at least with regard to the admission of Roy's confession against Emmaline, there was no prejudice. We will discuss each of the State's allegations in turn.

### A. *Deficient Performance*

We do not agree with the State's allegations that counsel's performance was adequate or with its post-hoc attempts to justify counsel's handling of many of the matters in the case. Here, we are confronted largely with counsel's lack of familiarity with Emmaline's case and with his complete failure to investigate the facts which would have provided him with that familiarity.

■ In assessing allegations that an attorney failed to investigate, we must determine whether counsel's decision to investigate or his determination that particular investigations were unnecessary was objectively reasonable. *Sullivan v. Fairman,* 819 F.2d 1382, 1391 (7th Cir.1987); *United States v. DeRobertis,* 811 F.2d 1008, 1014 (7th Cir.

1987). We remain aware that in order to eliminate hindsight's distorting effect, our assessment must proceed as an evaluation of counsel's conduct from his perspective at the time he decided to forgo these stages of pretrial preparation. *Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986). Under this standard, we find counsel's behavior unreasonable.

The State first suggests that counsel's failure to object to the admission of Angela's letter was not deficient performance. In support of this allegation, it suggests that the letter was merely "cumulative." We do not take such a narrow view of the matter. Counsel's failure regarding the letter did not consist simply of a failure to object to its admission into evidence. Instead, he breached his duty to investigate by failing to *familiarize* himself with the letter. Indeed, he did not even realize it was in his possession. As the district court correctly noted:

> [C]ounsel's duty to investigate would necessarily have included a review of the discovery materials provided by the State. Beauchamp's surprise at the letter being introduced at trial, and the embarrassing moment when the state's attorney quickly located it in Beauchamp's file, indicates that Beauchamp did not do so.

863 F.Supp. at 705. This is not simply a matter, therefore, of the strategic handling of Angela's letter.

Because counsel's behavior must be assessed as of the time he made the complained of decision, *Kimmelman*, 477 U.S. at 386–87, 106 S.Ct. at 2588–89, the "cumulative" nature of the letter provides no basis for counsel's failure to respond to its admission. Put simply, counsel was not aware of the letter's content or of the content of any supposedly "cumulative" trial testimony when he decided not to read the letter. We cannot imagine a plausible excuse for a decision not to read discovery materials voluntarily provided by the State. "Such a complete lack of trial preparation puts at risk ... the reliability of the adversarial testing process." *Kimmelman*, 477 U.S. at 385, 106 S.Ct. at 2588. We doubt in any event that the letter's cumulative nature would excuse much in light of its clear potential to corroborate Angela's testimony in this credibility contest. *See, e.g., Moffett v. Kolb*, 930 F.2d 1156, 1162 (7th Cir.1991) (cumulative statement nevertheless valuable as additional evidence); *Crisp v. Duckworth*, 743 F.2d 580, 585 (7th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985).

Because of his ignorance, counsel was both unable and unprepared to make any strategic decisions regarding the letter—including either objecting to its admission as hearsay or, faced with an ·adverse ruling, using the letter to impeach Angela's credibility. We can imagine no scenario excusing this failure. An attorney rather clearly has a duty to familiarize himself with the discovery materials provided by the state. *See Sullivan*, 819 F.2d at 1391. Because counsel failed in this regard here, his behavior was not objectively reasonable under *Strickland*. *Kimmelman*, 477 U.S. at 385–87, 106 S.Ct. at 2588–89.

The State also suggests that certain other lapses in counsel's conduct were objectively reasonable—namely, his failure to spend more time in trial preparation, his failure to interview witnesses, his failure to visit the home and his failure to investigate Angela's reputation. In support of these allegations, the State suggests that the case was "simple," merely a credibility contest between Angela and her adoptive parents, and that consequently, there was no reason for counsel to take these actions. We are unable to accept the State's view of this matter.

It is true that counsel is not required to spend any specific number of hours preparing for trial, whether those preparations relate to investigation, witness interviews or other preparatory matters. *Sullivan*, 819 F.2d at 1391. But we do expect him to do *something*, or alternatively, to provide an explanation for his lack of effort. Counsel has a duty to conduct an independent investigation of his client's case or to articulate a strategic reason for his failure to do so. *See Montgomery v. Petersen*, 846 F.2d 407, 412 (7th Cir.1988); *Nealy v. Cabana*, 764 F.2d 1173, 1177–78 (5th Cir.1985). Ineffective assistance doctrine teaches that "strategic

choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066.

Here, we have no strategic reason for counsel's complete failure to pursue various leads in the case. The State suggests that a number of "policies"—for instance, that counsel does not make a practice of visiting his clients' homes—motivated counsel, but these seem to us nothing more than thinly-veiled excuses for the violation of his obligations as an attorney. The other reason advanced to excuse his various failures—that the case was a "simple" credibility contest—does not account for a complete failure to act. A more thorough investigation could easily have developed leads affecting the credibility issues involved.

Counsel admitted in the district court that he conducted no investigation, other than speaking with his clients, and failed to interview any witnesses, including those on the State's witness list. The State insists that this behavior was objectively reasonable because this case was a "simple" credibility contest. This purported justification might excuse some attorney omissions, but it fails to excuse these. Here, the excluded witnesses would have served to bolster Emmaline's and Roy's credibility and to undercut that of Angela. Tanya Bergen, the natural daughter of Emmaline, for instance, could have stated that Angela never mentioned the incident to her. Because investigation into this matter might have revealed evidence bearing upon credibility (which counsel believed was the sole issue in the case), the failure to investigate was not objectively reasonable. *Chambers v. Armontrout*, 907 F.2d 825, 830–31 (8th Cir.) (counsel's decision not to interview and present witness that supported defendant's theory of defense deficient performance), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990).

Similarly, an investigation of the Williams's home and interviews with other occupants could have established certain facts about the alleged assault. The district court noted, for example, that:

this evidence would have indicated that, given the layout of the home and the relatively crowded conditions, the alleged assault could not have taken place as claimed, particularly as regards [an] "outcry."

863 F.Supp. at 705. In light of, again, the potential of this evidence to diminish Angela's credibility, it was not reasonable for counsel to fail to investigate or develop it. *See, e.g., Montgomery*, 846 F.2d at 412 (nonstrategic decision not to investigate is inadequate performance). It should have been clear to counsel prior to trial that these various sources of evidence might have had bearing on the credibility issues involved in his case. For this reason, he should have conducted some investigation into these matters.

■ The same is true of counsel's failure to investigate Angela's reputation. Two different letters from teachers called Angela's credibility into question in a fairly significant way. One of the letters, for instance, stated:

... During parental conferences, I attempted to express my concern over the character development of [Angela]. On numerous occasions, I found her to become an inveterate liar. It appeared to me that she was having a difficult time dealing with reality. This personality deficit was so severe that in layman's terms she would in a second become Dr. Jekyll and Mr. Hyde. These severe swings sincerely caused personal consternation. Her thwarted attempts to manipulate resulted in behavior difficult for me to describe....

131 Ill.Dec. at 215, 538 N.E.2d at 590 (Pincham, J., dissenting). A second letter had a similar tone and noted that Angela "had a problem telling the truth, and when she was confronted, she still refused to tell the truth." *Id.* While the letters themselves may not have been admissible, their existence certainly indicates that some sort of investigation in this area (interviews with teachers or other administrators) would have proved fruitful. Counsel's failure to discover the letters through preparatory investigation is therefore extraordinarily disturbing. The prosecution's case was built largely upon Angela's allegations, and counsel himself recognized

the necessity of a credibility contest. In a credibility contest, the testimony of neutral, disinterested witnesses is exceedingly important. *Montgomery,* 846 F.2d at 413–14; *Harris v. Reed,* 894 F.2d 871, 878 (7th Cir. 1990). Counsel simply should have looked into Angela's reputation; a simple question directed to Emmaline would have revealed that Angela had difficulties at school. In light of this, counsel's failure to pursue evidence that would have significantly undermined Angela's claims was not objectively reasonable.

■ The State's attempts to justify counsel's various lapses do not satisfy us. We do not believe that his complete failure to investigate—in all of its manifestations—can be excused as the conduct of counsel that the Sixth Amendment was designed to guarantee. We also note that the State appears to concede that counsel's performance was deficient in two respects. First, the district court noted that counsel reasonably should have sought to have the use of Roy's confession, once admitted, limited to Roy. 863 F.Supp. at 706. Second, the district court noted that counsel's failure to consider seeking a severance for Emmaline was not objectively reasonable. *Id.* at 708. The State, in its briefing, does not suggest that either of counsel's failures on these points was reasonable. We therefore assume that it concurs with the district court (as we do) concerning the limitation of Roy's confession and the viability of severing Emmaline's defense. *See Smith v. Dugger,* 911 F.2d 494 (11th Cir.1990) (failure to move to suppress confession unreasonable in light of counsel's failure to investigate the circumstances of the confession or the interrogation). Finding counsel's omissions to fall below the standard of conduct that *Strickland* envisions, we now move on to prejudice analysis.

## B. *Prejudice*

■ In order to obtain relief under *Strickland,* it is not sufficient that a petition-er can point to her attorney's deficient performance. In addition, she must be able to demonstrate that the complained of deficiency resulted in prejudice, or, as discussed above, a "reasonable probability" that in the absence of error the result of the proceedings would have been different, *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, and was fundamentally unfair or unreliable. *Lockhart,* —— U.S. at ——, 113 S.Ct. at 842–43. In making this showing, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland* 's test. *United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 958 (7th Cir.1986); *Montgomery,* 846 F.2d at 416.

■ We agree with the district court's assessment that Emmaline has succeeded in demonstrating prejudice here.[4] Counsel's lack of familiarity with the case, combined with his failure to investigate, provided Emmaline with a trial significantly different than the trial she might have received if represented by a competent attorney. There exists, in short, a reasonable probability that the outcome would have been different. We believe that counsel's various failures have called the fairness of her proceeding into question.

The State relied primarily on two factors to secure Roy's and Emmaline's convictions. The first was Angela's direct testimony, which was supported by the earlier statement contained in her letter. The second was Roy's confession. Counsel had at his disposal the tools to eliminate or dilute the effects of both of these factors in Emmaline's case.

As noted, counsel should have first attempted to protect Emmaline from the effects of Roy's confession, which clearly inculpated Emmaline. He could have investigated a number of avenues in pursuit of this

---

4. In its brief, the State makes only two allegations regarding prejudice. First, it suggests that the use of Roy's statement against Emmaline was not prejudicial, a matter we will discuss in the text. Second, however, it claims that the district court "completely omitted any prejudice analysis whatsoever." Appellant's Br. at 23. We find this latter allegation to be untenable. The district court discusses prejudice, both expressly, 863 F.Supp. at 706, and in its handling of counsel's various omissions. The State has not come forward with any more specific complaints about the district court's conclusions regarding the effect of counsel's omissions at trial.

result. The first avenue he might have considered was the possibility of severing Emmaline's trial from that of Roy. Under Illinois law,

> ... when a motion for a separate trial is predicated on the premise that a codefendant's confession or admission implicates the moving defendant, a severance should be granted unless the prosecution declares that the admission or confession will not be offered in evidence at the time of trial, or if offered, that there will be eliminated therefrom any and all reference to the party applying for the severance.

*People v. Schmitt,* 173 Ill.App.3d 66, 122 Ill.Dec. 886, 899, 527 N.E.2d 384, 397 (1988). *See also People v. McVay,* 98 Ill.App.3d 708, 54 Ill.Dec. 172, 177, 424 N.E.2d 922, 927 (1981) ("admission of codefendant's statement implicating the other party defendant works a substantial and unfair prejudice on the other party"); *People v. Allen,* 36 Ill. App.3d 821, 344 N.E.2d 825, 828 (1976) ("A confession or admission by one defendant incriminating the other is ground for a severance unless the State promises either to avoid introducing the statement into evidence or to delete all references to the other defendant."). It appears, therefore, that a motion for severance may have been successful in state court. Emmaline has therefore demonstrated the necessary reasonable probability of success on the motion to sever. *See Sullivan,* 819 F.2d at 1393 (noting that an outcome need not be certain in order to prevail).

 In addition to his failure to move for a severance, counsel failed to take other measures to limit the use of Roy's confession. It is clear that the use of a codefendant's confession against another defendant at a joint trial is restricted. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).[5] Yet counsel did not attempt to have the statement redacted to eliminate any reference to Emmaline. *See United States v. Clark,* 989 F.2d 1490, 1499 (7th Cir.1993)

(failure to grant severance was not an abuse of discretion where reference to defendant had been eliminated from confession). Nor did he object to the confession's admission or otherwise attempt to limit its use against Emmaline. *See Allen,* 344 N.E.2d at 829–30 (admission of codefendant's out-of-court confession was "highly damaging" to defendant and denied him a fair trial). Indeed, Officer Lux was allowed to publish the statement to the court, and consequently read it during his direct testimony. This statement directly implicated Emmaline. Counsel did not ask to have use of the statement restricted to Roy. We have to assume that the trial court did not in fact so restrict the statement's use; he gave no indication that use of the confession would be restricted or limited to assessing Roy's culpability.

The State claims that the admission of this statement was not prejudicial because it believes that Emmaline implicated herself in the offense. We disagree. Emmaline did not specifically confess to any of the activities in question. Her only statement to the police, according to Officer Lux, suggested that whatever Roy said "must be so." *Williams,* 131 Ill.Dec. at 201, 538 N.E.2d at 576. This is not the sort of incriminating statement that might cure the prejudice resulting from the use of Roy's confession against Emmaline. Emmaline denies making such a statement. And Officer Lux apparently never recorded such a statement. In light of the alleged statement's lack of content and under these circumstances, we do not believe that the prejudice Emmaline suffered from the use of Roy's confession has been cured. Aside from its conclusory allegation, the State has not indicated why such a statement should be taken as curing the prejudice Emmaline suffered. And it has not otherwise suggested why Emmaline's alleged statement to Officer Lux is material.

The use of Roy's confession to determine Emmaline's culpability was prejudicial. It was significant precisely because it was the

---

5. We note here that Emmaline is not complaining that her Sixth Amendment right of confrontation has been violated. *See, e.g., Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) (defendant's right to confront witnesses not violated by admission of codefendant's confession if codefendant takes stand); *People v. Holloway,* 225 Ill.App.3d 47, 167 Ill.Dec. 412, 415, 587 N.E.2d 1027, 1030 (1991) (same).

only independent evidence implicating her in the offense. Without Roy's confession, Emmaline's guilt rose or fell solely upon Angela's credibility. As the district court noted, a trial without Roy's confession "would have been a far different proceeding." 863 F.Supp. at 708. *See also Williams*, 131 Ill. Dec. at 204, 538 N.E.2d at 579 ("The only competent evidence against codefendant Emmaline Williams was the totally uncorroborated testimony of A.W., extremely belatedly given, under gravely suspicious circumstances.") (Pincham, J., dissenting). In the absence of Roy's confession, the trier would have been limited to considering Angela's testimony and her earlier statement contained in the letter. Because a "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support," *DeRobertis*, 811 F.2d at 1015 (quoting *Strickland*, 466 U.S. at 695–96, 104 S.Ct. at 2068–69), we believe that Emmaline suffered prejudice in the use of Roy's confession against her.

Add counsel's total failure to effectively deal with Angela's letter to concerns about Roy's confession and the case against Emmaline becomes even weaker. The letter, as admitted, served to buttress Angela's credibility in two respects. As a prior statement made months earlier, the letter substantiated Angela's trial testimony. Counsel failed to attempt to neutralize this effect by objecting to the letter's admission. Once the letter had been admitted, however, any inconsistencies it contained went unnoticed; counsel failed to highlight any differences between the earlier letter and Angela's trial testimony. *See Moffett*, 930 F.2d at 1161 (counsel's failure to impeach witness rendered part of trial testimony "completely trustworthy"). These omissions were significant precisely because Emmaline's trial, absent Roy's confession, was (or should have been) about Angela's credibility. Counsel's failure to use available tools to undermine this credibility resulted in prejudice.

█ We also wish to note that a number of credibility issues simply remained undeveloped because of counsel's errors. Most notable are the two letters from disinterested

school teachers suggesting that Angela was an "inveterate liar," and that she "had problems telling the truth." Common sense suggests that investigation into these matters could easily have produced trial testimony concerning Angela's reputation for veracity. Testimony of this sort, if it existed, would provide even further convincing proof that Emmaline suffered prejudice as a result of counsel's numerous failures. We remain aware, however, of the admonition that the failure to investigate cannot be used as a substitute for proof of prejudice, *see DeRobertis*, 811 F.2d at 1016. We therefore do not technically consider this factor in our prejudice analysis; the letters themselves would likely have been inadmissible, and it is not clear what the testimony of witnesses, if called, would have been. But we do note that omissions in this respect, going as they do to the issue of Angela's credibility, are nevertheless significant. They present further proof of another missed opportunity to dismantle the State's case against Emmaline.

█ Assessments of prejudice are necessarily fact-intensive determinations peculiar to the circumstances of each case. *See Nealy*, 764 F.2d at 1179. Here, counsel's failure to protect Emmaline from the effect of Roy's confession, combined with his failure to prevent the prosecution from using Angela's letter to buttress her credibility, produced a trial significantly different than the one that Emmaline should have received. We are convinced that, absent counsel's errors, there exists a reasonable probability that the factfinder would have had a reasonable doubt concerning Emmaline's guilt.

## IV.

We believe the district court correctly granted Emmaline's request for habeas relief. Because its decision was based on factual matters available to the state courts, it did not erroneously rely on materials that it was barred from considering. Neither did the district court use an expansive interpretation of *Strickland* to reach its result. Having reviewed the record, we agree that counsel's deficiencies were egregious enough to

deprive Emmaline Williams of her Sixth Amendment rights. We therefore AFFIRM.