In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1082 & 99-2613

Ramiro Hernandez,

Petitioner-Appellant,

v.

Roger D. Cowan, Warden,

Respondent-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97-C-1296--Ruben Castillo, Judge.

Argued December 3, 1999--Decided January 3, 2000

Before Posner, Chief Judge, and Coffey and Manion,
Circuit Judge.

Posner, Chief Judge.  In 1979, Ramiro Hernandez
was tried together with Daniel Santisteven in an
Illinois state court for murder, was convicted by
the jury, and was sentenced to fifty years in
prison, where he remains. After his conviction
was affirmed and his request for state
postconviction relief denied, he sought federal
habeas corpus, which was also denied,
precipitating this appeal. He had failed to seek
discretionary review from the Supreme Court of
Illinois of either of the two state court
appellate decisions in his case; and, invoking
O'Sullivan v. Boerckel, 119 S. Ct. 1728 (1999),
involving direct review of convictions, and White
v. Godinez, 192 F.3d 607 (7th Cir. 1999) (per
curiam), extending O'Sullivan to review of
denials of postconviction relief, the state
argues that this failure forfeits his right to
obtain relief by means of a federal habeas corpus
proceeding. The petitioner replies that the state
waived the argument by failing to make it in the
district court. To this the state responds that
O'Sullivan and White were decided after the
district court proceedings and overruled the
position of this court, which had been that
failure to seek discretionary review from the
state's highest court is not a procedural default
barring federal habeas corpus.

In short, the petitioner is arguing waiver of waiver, now a well-established doctrine, e.g., In re Brand Name Prescription Drugs Antitrust Litigation, 186 F.3d 781, 790 (7th Cir. 1999); United States v. Woods, 148 F.3d 843, 849 n. 1 (7th Cir. 1998); Atkins v. New York City, 143 F.3d 100, 102-03 (2d Cir. 1998); United States v. Reider, 103 F.3d 99, 103 n. 1 (10th Cir. 1996), that we applied against the State of Illinois in another habeas corpus case, Fagan v. Washington, 942 F.2d 1155, 1157 (7th Cir. 1991), while the state is asking that its waiver be excused on the ground that it would have been futile to argue waiver at a time when the law of this circuit was contrary; it would just have irritated the judges. This argument cannot be right. For years the State of Illinois had been arguing in the district courts of this circuit and in this court that failure to seek discretionary review by the state's highest court forfeited a state prisoner's right to federal habeas corpus. E.g., Jenkins v. Nelson, 157 F.3d 485, 497 (7th Cir. 1998); United States ex rel. Gonzalez v. Thornton, No. 97 C 5585, 1999 WL 92902, at *3 (N.D. Ill. Feb. 17, 1999). We had never criticized the state for seeking to preserve the issue for possible review by the U.S. Supreme Court. O'Sullivan had originated in this circuit, and in that case the state had argued the waiver point in both the district court and this court, contemporaneously with the present litigation. The state's failure to argue or at least reserve the point in the present case, especially when the existence of a circuit split made the possibility of Supreme Court correction more than merely theoretical, is inexplicable; and a foreseeable change in law is (if it comes to pass) at best a weak ground for relieving a party of the consequences of its waiver. Carr v. O'Leary, 167 F.3d 1124, 1126-27 (7th Cir. 1999). So we shall proceed to the merits.

The principal issue is whether Hernandez was denied effective assistance of counsel at his murder trial. The essential facts are as follows, and are uncontested. Jorge Orosco was killed on a street in Chicago in a hail of bullets at about 1 a.m. Six bullets were removed from his body, and three were discovered to have come from a revolver owned by Santisteven; the revolver that fired the other three bullets has never been found. Several weeks later the police questioned a young man named Angel Cruz, and on the basis of the questioning arrested Santisteven for the murder two years earlier of Gilbert Santiago. A search of Santisteven's home turned up his revolver along with a number of other firearms. On the same day, police arrested Hernandez for Orosco's murder, but a search of Hernandez's home yielded no incriminating evidence.

Santisteven, arrested as we have said for the murder of Santiago (for which, however, he has never been tried, even though he was identified in a lineup as Santiago's killer), confessed to involvement in Orosco's murder as well and was duly indicted, along with Hernandez, for that murder. Santisteven moved before trial to suppress his confession. At the suppression hearing that ensued he testified that the police had said they would help him in a variety of ways (including not pressing any charges of illegal possession of guns) if he implicated Hernandez in the murder, and that he had responded to their offer of help by stating that Hernandez had killed Orosco and that the latter was already dead when he, Santisteven, shot him. (Yet the bullets that matched Santisteven's gun were removed from the victim's head, and the bullets of unknown providence from his trunk.) Not only was Santisteven never prosecuted for Santiago's murder; he was never prosecuted for illegal possession of the arsenal of firearms taken from his home during the search. Although convicted along with Hernandez at their joint trial of the murder of Orosco, Santisteven was sentenced to only 25 years, half the length of Hernandez's sentence, and he has since been released.

Hernandez's lawyer moved to sever the trials of the two defendants on the ground that Santisteven's confession implicated Hernandez as well. The judge denied the motion on the ground that all references in the confession to Hernandez would be excised in the version read to the jury, in conformity with the rule of Bruton v. United States, 391 U.S. 123 (1968); and this was done.

The only evidence presented in the government's case-in-chief of Hernandez's guilt was testimony by Cruz, who knew Hernandez, that he had heard the shots that did in Orosco and had seen two men running toward him (Cruz), one of whom was Hernandez; the other he couldn't identify. There was nothing in Cruz's testimony to indicate whether the two men were running because they were afraid (Cruz himself was running, for just that reason, when he saw them) or because they were the shooters.

Hernandez moved for acquittal at the close of the government's case, but this was denied and he argues that the denial violated his due process right not to be convicted on evidence insufficient to persuade a rational jury of guilt beyond a reasonable doubt. E.g., In re Winship, 397 U.S. 358, 364 (1970). No doubt the denial was erroneous as a matter of state law, for no reasonable jury could have convicted Hernandez on

Cruz's evidence alone; but we cannot find any basis in federal constitutional law as laid down by the U.S. Supreme Court (the applicable criterion in a federal habeas corpus proceeding, Schaff v. Snyder, 190 F.3d 513, 522 (7th Cir. 1999)) for the proposition that due process is violated by the denial of a motion to acquit in the middle of the case. The proposition is in any event inconsistent with the settled rule that in deciding whether a defendant is guilty the jury can consider all the evidence, regardless of which side introduced it, and so can rely on evidence presented by the defendant, which he may have erroneously believed exculpatory. United States v. Guerrero, 114 F.3d 332, 339 (1st Cir. 1997); United States v. Ruiz, 105 F.3d 1492, 1495 n. 1 (1st Cir. 1997); United States v. Lopez, 625 F.2d 889, 897 (9th Cir. 1980); 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law sec. 1.8(h), p. 83 (1986).

After the motion to acquit was denied, the defense case began and Santisteven took the stand and testified, consistently with his confession, that he had shot Orosco only after Hernandez had killed him. But he added to the statements in the confession that he had done so because Hernandez believed that Orosco was a member of a rival gang. Hernandez then testified that he had been at home asleep when Orosco was murdered. He also denied a gang affiliation. In closing argument, the prosecutor adopted Santisteven's version of the facts, and he also told the jury that he was "not intimidated by the punks out in the gallery. . . . I'm not intimidated by the Imperial Gangsters [Hernandez's alleged gang], nor am I intimidated by the Latin Kings, and by God I hope the jury isn't intimidated by it." (The "punks" in the gallery were actually the family and friends of Orosco, rather than of either defendant.) The prosecutor also told the jury that Santisteven's confession had been "presented to you in partial form. . . . [F]or legal reasons you could not hear the whole story."

Although Hernandez's trial lawyer moved for severance, he did so on the wrong ground; and while a mistake is not the same thing as malpractice, it is plain that the lawyer's failure to move on the right ground failed to come up to a minimum standard of professional competence. For the lawyer had inexcusably failed to attend the suppression hearing (or to read the transcript of it either at all or with comprehension), at which he would have learned that the defendants had antagonistic defenses and that if Santisteven testified at Hernandez's trial he would fill the void in the government's case against Hernandez. The district judge rightly concluded both that the lawyer had indeed

fallen below the threshold of competent representation, see Williams v. Washington, 59 F.3d 673, 682 (7th Cir. 1995); United States v. Zackson, 6 F.3d 911, 919-20 (2d Cir. 1993); United States v. Yizar, 956 F.2d 230 (11th Cir. 1992); cf. Hall v. Washington, 106 F.3d 742, 749-50 (7th Cir. 1997); Kenley v. Armontrout, 937 F.2d 1298, 1304-08 (8th Cir. 1991); compare United States v. Jackson, 33 F.3d 866, 875-76 (7th Cir. 1994), and that the state trial judge, if properly advised of the situation, would have severed the trial of the two defendants. See People v. Bean, 485 N.E.2d 349, 355 (Ill. 1985); People v. Rodriguez, 680 N.E.2d 757, 766 (Ill. App. 1997); see also Williams v. Washington, supra, 59 F.3d at 683 (discussing Illinois severance law). Not because severance is automatic under either Illinois or federal law, Zafiro v. United States, 506 U.S. 534, 539 (1993), though only the former is relevant to this issue if codefendants have antagonistic defenses; but because when the nature of the antagonism is such as to make one defendant the accuser of the other, so that the other has to defend not only against the state's evidence but also against testimony offered by his fellow defendant, the Illinois courts order severance. E.g., People v. Bean, supra, 485 N.E.2d at 355.

But we must consider whether there was a reasonable probability (Strickland v. Washington, 466 U.S. 668, 694 (1984)) that the severance would have made a difference to the outcome of the trial. If Santisteven would have taken the stand in a separate trial of Hernandez and been cross-examined as he was in the joint trial, the answer is "no." But he would have taken the stand only if he had been promised a break if he did so, and such a deal would have exposed him to potentially very damaging cross-examination, which would have revealed that Santisteven was strongly suspected of having committed another murder, thus casting the deal in a particularly unsavory light. (If he would not have taken the stand, Hernandez would have had no incentive to do so, and would almost certainly have been acquitted.) It would have been apparent to the jury that the defendant who admitted having shot the murder victim and who was in jeopardy of being prosecuted for still another murder (and might therefore be a prime candidate for capital charges) was trying in exchange for leniency to pin the blame on the other defendant, and the jury might well have been skeptical of Hernandez's guilt given the dearth of other evidence against him.

The point is not that, had Hernandez's lawyer been up to snuff, valid evidence of his client's guilt would have been withheld from the jury;

assistance of counsel is not constitutionally ineffective when the lawyer's pratfalls do not undermine confidence in the accuracy of the verdict. Holman v. Page, 95 F.3d 481, 490 (7th Cir. 1996). So weak was the evidence against Hernandez apart from Santisteven's testimony, and so weak would that testimony have been if effective cross-examination had been feasible, that counsel's ineffectuality does undermine our confidence that Hernandez was actually guilty.

At argument the state's lawyer spun some fanciful webs for us, for example suggesting that had the motion to sever been granted Santisteven would have been tried first, convicted, and then for the hell of it would have testified at Hernandez's trial, though he would have had nothing to gain by doing so. Anything is possible, but if Santisteven had testified as the state's witness he would have been ripped apart on cross-examination. In summary, it is reasonably probable that but for the subpar performance of Hernandez's lawyer, Hernandez would have been acquitted. United States v. Yizar, supra, 956 F.2d at 233-34; see also Williams v. Washington, supra, 59 F.3d at 682-83. He is entitled to a new trial within 120 days, or failing that to be released. In light of this ruling, it is unnecessary to consider whether the prosecutor's closing argument, though reprehensible, independently violated Hernandez's constitutional rights.

Reversed.