**Albert WRIGHT, Jr., Petitioner–Appellant,**

v.

**Richard GRAMLEY, Respondent–Appellee.**

**No. 95–1581.**

United States Court of Appeals, Seventh Circuit.

Argued July 8, 1997.

Decided Sept. 16, 1997.

---

Allen E. Shoenberger (argued), Nidhi Desai, law student, Loyola University School of Law, Chicago, IL, for Petitioner–Appellant.

Bradley P. Halloran, Margaret M. O'Connell, Office of the Attorney General, Catherine Glenn (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before POSNER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Albert Wright sought a writ of habeas corpus under 28 U.S.C. § 2254 on the ground that his trial counsel rendered ineffective assistance by failing to investigate adequately and present a defense. Mr. Wright alleged that trial counsel failed to interview or call three witnesses and was dilatory in interviewing one potential alibi witness who would have provided the jury with reasonable doubt as to his guilt. He now appeals the district court's denial of his petition. For the reasons set forth in the following opinion, we vacate the judgment of the district court and remand the case for proceedings consistent with this opinion.

## I

## BACKGROUND

During the very early morning hours of April 6, 1990, Michael Ritter was attacked at Janet Lee's Tavern. He was slashed twice across the face and once across the back with a razor-like weapon. Albert Wright later was convicted of armed violence and aggravated battery in the state court in Lake County, Illinois.

Ritter and Gloria Payne worked at Baxter Laboratories in Round Lake, Illinois. On April 5, 1990, at approximately 8:00 p.m., Ritter and Payne had an altercation; angry words were exchanged; Payne shoved Ritter. At approximately 11:45 p.m., Greg Hanan saw Payne leave Baxter and talk to a man who was in a blue Toyota. According to Hanan, Payne returned to the building, and the man drove away in a white Chevy Corsica. It is unclear from Hanan's testimony whether he saw the man arrive and, if he did, whether the man was driving the Toyota or the Chevy. In any event, Hanan testified that he did not see the man well enough to identify his race or to recognize him afterwards.

Ritter's shift ended at midnight. After work, he and other Baxter employees went to Janet Lee's, a tavern, to cash their paychecks.[1] The tavern had a special window in the back for this purpose. After cashing his check, Ritter stood in the check-cashing area talking with other Baxter employees. Someone came up behind him and slashed his face twice and his back once. The attacker said something to the effect of "that will be the last time you screw around with anybody." Ritter did not see his attacker and therefore was unable to identify him. Ritter later stated that he had never seen Mr. Wright before the attack.

Barbara Thompson is a Baxter employee who also went to Janet Lee's to cash her check that night. She testified that when she got there she saw a man pacing back and forth in front of the door leading to the check-cashing window. She stated she was

approximately four feet away from him and that the area was well lit. Thompson said the individual rushed past her as she opened the door, went up to Ritter (who was facing away from the door) and appeared to punch him in the back two or three times. She said the individual then ran past her out of the bar. Thompson made an in-court identification of Mr. Wright as the individual she saw. She also identified his picture in a photo line-up and his person in a physical line-up. On cross-examination, she admitted that during the physical line-up she asked two people to step forward before choosing Mr. Wright, that on the night of the attack she observed the attacker for only a matter of moments and had been terrified, and that she never saw a weapon.

Richard Davis, also a Baxter employee, testified that on the night of the attack he, Ritter and Miguel Nieves left Baxter at about 11:55 p.m. and drove to Janet Lee's to cash their checks. Davis testified that he noticed a man, whom he later identified as Mr. Wright, standing in the doorway to the hall. He said that the man lunged past him and his friend, went up to Ritter and appeared to slap him in the face and then hit him in the back. Davis stated that he was approximately one foot or eighteen inches away from Ritter, close enough to be splattered by Ritter's blood. Davis followed Mr. Wright out of the bar and saw him get into a white Chevrolet Corsica with black trim and drive away. Davis also picked Mr. Wright out of photo and physical line-ups. On cross-examination, Davis admitted that he was not wearing his eyeglasses at the time of the attack and that he did not see a weapon.

Other testimony established that, at the time of the attack, Payne and Mr. Wright shared an apartment in Zion, Illinois. Further, Mr. Wright was employed as a printer in Mundelein, Illinois, used a razor-like knife in his job, and left work shortly after 11:00 p.m. on April 5th. His former supervisor, Roy Olson, testified that Mr. Wright normally drove a brown Ford Fairmont with a black hood. However, about two weeks before the

---

**1.** The record does not reflect the distance from Baxter to Janet Lee's. However, all of the witnesses drove the distance.

attack, Olson saw him driving a maroon Toyota. On cross-examination, Olson admitted that he did not remember what kind of car he had seen Mr. Wright driving two weeks before the attack, and that he certainly did not remember what car Mr. Wright had been driving on April 5, 1990. Later, the officer who arrested Mr. Wright testified that, immediately before the arrest, Mr. Wright had been driving a blue Toyota.

The defense called only one witness, Mary Rivera. She testified that she was standing approximately one or two feet away from Ritter when he was attacked, but that she was unable to identify the attacker. On cross-examination she admitted that Davis was closer to Ritter than she had been, that the only description of the attacker she was able to give was that he had glasses and was wearing an orange jacket, and that she did not know if Mr. Wright (sitting at the defense table) had appeared in the line-up which she viewed.

The jury convicted Mr. Wright, and the judge imposed an extended-term sentence of 40 years' imprisonment. The judgment was affirmed on direct appeal, but remanded to correct some paperwork. Mr. Wright also filed a pro se petition seeking postconviction relief on the ground that he was denied the effective assistance of counsel. The state court summarily dismissed the petition as frivolous. The state appellate court addressed the merits of his claim. However, the appellate court decided that Mr. Wright's claims did not warrant an evidentiary hearing. The state appellate court first held that Mr. Wright had failed to establish prejudice because he had failed to present affidavits from the witnesses presenting the testimony that they would have given if called to testify. The court further held that, even if the witnesses had given the testimony that Mr. Wright claims they would have given, the result would have been the same. Finally, in summary fashion, the court noted several aspects of the trial in which the defense counsel had been of meaningful assistance to Mr. Wright's case and, on the basis of those observations, determined that counsel's performance was not constitutionally deficient.

Mr. Wright later filed a petition for a writ of habeas corpus in federal district court. He again claimed that his trial counsel conducted an inadequate pretrial investigation and failed to call certain witnesses whose testimony would have provided reasonable doubt as to his guilt. In a summary order, the district court, applying *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), agreed with the state court's analysis of Mr. Wright's version of the expected testimony of the three witnesses. Accordingly, the district court denied the petition. Mr. Wright appeals; he argues that the district court should have granted an evidentiary hearing. This court appointed counsel, and the case was set for oral argument.

## II

## DISCUSSION

At the outset, we note that, because Mr. Wright filed his petition prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, his claims must be evaluated according to the standards existing before the Act amended 28 U.S.C. § 2254. *Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). Prior to the amendments, this court reviewed a district court's decision regarding an ineffective assistance of counsel claim de novo. *See United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir.1991), *cert. denied*, 502 U.S. 1116, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir.1990).

In order for Mr. Wright to establish his ineffective assistance claim, he must demonstrate both that his counsel's performance was deficient and that he was prejudiced as a result. *Williams v. Washington*, 59 F.3d 673, 679 (7th Cir.1995) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). We shall focus on the "prejudice" prong. To establish prejudice, Mr. Wright must show that there was a reasonable probability that the outcome of his trial would have been different. *Id.* A reasonable probability is defined as one sufficient to undermine confi-

dence in the outcome. *Id.* In assessing whether Mr. Wright has demonstrated prejudice, this court must consider the evidence in its totality. *See Montgomery v. Petersen,* 846 F.2d 407, 411 (7th Cir.1988); *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1015 (7th Cir.1987). Finally, "a 'verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Williams,* 59 F.3d at 684 (quoting *DeRobertis,* 811 F.2d at 1015).

Mr. Wright asserts that counsel's performance was deficient in that counsel failed entirely to interview three witnesses: Mary Gullett, Hurtle Foster[2] and Miguel Nieves. He alleges that testimony by Foster and Nieves would have cast considerable doubt on the identifications made by the two eyewitnesses who did testify, Thompson and Davis. Mr. Wright contends that testimony by Gullett would have cast doubt on whether he was the man seen in the blue Toyota. He also claims that counsel's performance was deficient because the attorney waited two months before interviewing a fourth witness, Kathy Stanley, who he alleges would have provided an alibi for him. Mr. Wright claims that, by the time counsel did interview Stanley, she was unable to remember the exact date of the night he helped carry her groceries at around midnight.

■ The state appellate court, although noting that Mr. Wright had not presented affidavits containing a description of the expected testimony of each of these witnesses, proceeded to consider the testimony that Mr. Wright said that he expected these individuals to give. The state appellate court concluded that, even if Mr. Wright has correctly portrayed the testimony, it would make no difference with respect to the outcome of the trial. To the extent that its order evinces any independent analysis, the district court subsequently reached the same conclusion. We think that the analysis of these courts is certainly correct with respect to three of the proposed witnesses. The failure to call Miguel Nieves was never brought to the attention of the state courts and therefore was not properly before the federal habeas court absent a showing of cause and prejudice. *See Steward v. Gilmore,* 80 F.3d 1205, 1211–12 (7th Cir.1996). Mary Gullett's expected testimony was so tangential to the issues at trial that it would not have affected the outcome. Kathy Stanley's testimony, even if she had been able to recollect that Mr. Wright had helped her on the night in question, would have provided, at best, a very weak alibi. The testimony of the remaining prospective witness, Hurtle Foster, gives us more pause.

■ Foster was another eyewitness to the attack on Ritter. In the police report recounting the incident, Foster is quoted as describing the attacker as being a black man, "approximately 26 years of age, 6'2", approximately 145 lbs" with black hair and brown eyes. Foster is also quoted as observing that the attacker had a white pearl earring in his left ear. The police report also contains a description of Mr. Wright as he appeared during the line-up: at the time, he was 43 years old, 5'10" and 190 pounds. Therefore, Foster's description of the attacker is of someone seventeen years younger, four inches taller, and 45 pounds lighter than Mr. Wright. Further, none of the other eyewitnesses reported that the attacker was wearing an earring, nor does the police report indicate Mr. Wright wore an earring. Thus, Foster was a witness who could have affirmatively stated that Mr. Wright was not the attacker. However, according to Mr. Wright, counsel failed to pursue this lead and never even interviewed Foster.

Moreover, Foster's testimony would have been exculpatory because it described a person radically different than Mr. Wright; Foster's description would have directly conflicted with the testimony of Thompson and Davis; and, if believed by the jury, could have directly influenced the result in the trial. Having Foster testify in Mr. Wright's favor would have transformed a relatively weak defense into a far stronger one. The

---

**2.** Mr. Wright's appellate counsel variously refers to this individual as "Hurstle Forest" and "Hurstle Foster." However, in his original pro se brief, Mr. Wright identifies him as "Hurtle Foster," and the police report relied upon by Mr. Wright to support his claim regarding Foster identifies him as "Hurtle Foster." Therefore, we believe the correct name is Hurtle Foster.

importance of this testimony is emphasized when one considers that counsel's sole strategy apparently was to impeach the perceptual abilities of the testifying eyewitnesses.[3] Additionally, the state's case was not overwhelmingly strong. It relied almost exclusively on the testimony of two eyewitnesses.[4] The state did not produce the weapon (apparently an Exacto knife); introduced no evidence linking Mr. Wright with the Chevy Corsica that three witnesses testified was the type of car driven by the attacker; nor produced any physical evidence establishing that Mr. Wright was the attacker. The outcome of a weak prosecution case is more likely to be affected by errors than a strong one. *Williams*, 59 F.3d at 684; *see also United States v. Morrison*, 946 F.2d 484, 500 (7th Cir.1991) ("Whether such a reasonable probability exists [i.e., that counsel's performance affected the trial's outcome] depends, of course, on the nature and strength of the government's case against him, and the nature of his attorney's failures."). The state's submission that the eyewitness testimony of the prosecution's witnesses was so convincing that Foster's testimony would make no difference is pure speculation.

Both the state appellate court and the district court, to the extent that it addressed the situation, were of the view that, even if we accept Foster's testimony, the result would not change. A close examination of the courts' analysis, however, makes clear that both courts relied not on an independent examination of the evidence but on Mr. Wright's failure to supply an affidavit from Foster that he would testify in accordance with the police report. The state appellate court also added that Mr. Wright's statement "seems to show" that not calling Foster was tactical, but, here again, as the state appellate court implicitly recognized, there is no affidavit or record evidence to support such a conclusion.

We believe that Mr. Wright's contention with respect to the testimony of Foster deserves a more careful scrutiny by the district court than it has received up to this point. On remand, the district court first ought to confront the fact that Mr. Wright, although presenting this issue to the state appellate court, failed to present that tribunal with an affidavit from Foster as to the substance of his testimony. In *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), the Supreme Court of the United States held that the cause-and-prejudice standard is the correct standard for excusing a habeas petitioner's failure to develop a material fact in state court proceedings. We think that Mr. Wright has established, at least for purposes of complying with *Tamayo–Reyes*, the "prejudice" aspect of this test. However, he has not demonstrated, at this point, "cause" for his failure to submit the affidavit required by state practice and, indeed, required by federal standards as well. The district court ought to give him the opportunity to make this showing. We have recognized that prison is a difficult place from which to litigate, much less organize an affidavit from an individual unknown to the petitioner. *See* United States ex rel. *Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987) (acknowledging the difficulty incarcerated petitioners have fulfilling the burden to produce sufficiently precise evidence of what uncalled witnesses would have testified). Mr. Wright must at least be given the opportunity to convince the district court that his failure to present the facts in plenary fashion to the state court was not due to his own neglect. Mr. Wright, in his pro se brief, explained: "Petitioner, not knowing any of those persons [i.e. the potential witnesses] personally, had no way of finding them to obtain statements from

---

3. *See Williams*, 59 F.3d at 681 (failure to investigate a potential trial witness was objectively unreasonable when that testimony would have bolstered counsel's theory of the defense).

4. *See United States v. Cook*, 102 F.3d 249, 252 (7th Cir.1996) ("[E]yewitnesses may give unreliable testimony, because of the shortcomings of memory, the difficulty of categorizing facial fea-

tures of other ethnic groups, and the tricks the mind plays on people desperate to pin the blame on someone."); *United States v. Bolton*, 977 F.2d 1196, 1201 (7th Cir.1992) (mentioning Supreme Court's "concern that eyewitness testimony convinces juries but is often unreliable" in citation to *Manson v. Brathwaite*, 432 U.S. 98, 111–12, 97 S.Ct. 2243, 2251–52, 53 L.Ed.2d 140 (1977)).

prison, and doing the P[ost] C[onviction] petition from prison, there is no way for petitioner to obtain affidavits pro se." Appellant's Br. at 27. In the district court, he argued that the state post-conviction court should have appointed counsel, concluding: "Counsel could then have sought the affidavits of the witnesses who should have been called at trial." R.11 at 27. These conclusory statements are sufficient to indicate, from the pen of a pro se litigant, that Mr. Wright understood the necessity of explaining the absence of the affidavit. They are not sufficiently specific, however, to fulfill the requirement that Mr. Wright show "cause." He must submit an affidavit setting forth with particularity why Mr. Wright did not attach an affidavit from the witness, and what steps he took, if any, to procure the witness' affidavit.

When Mr. Wright presents this affidavit to the district court, that court will then have to determine whether Mr. Wright's explanation adequately excuses the absence of the witness' affidavit.[5] If it determines that Mr. Wright has established cause for his failure to present the affidavits, the district court then must evaluate how best to proceed. As Judge Kanne wrote for the court recently, "[u]nder *Townsend [v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)]* and *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), a federal evidentiary hearing is required if a habeas petitioner alleges facts which, if proved, would entitle him to relief and the state courts—for reasons beyond the control of the petitioner—never considered the claim in a full and fair hearing." *Porter v. Gramley,* 112 F.3d 1308, 1317 (7th Cir. 1997); *see also Resnover v. Pearson,* 965 F.2d 1453, 1456 & n. 2 (7th Cir.1992), *cert. denied,* 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993); *Spreitzer v. Peters,* 114 F.3d 1435, 1456 (7th Cir.1997). The Supreme Court has also made it clear, however, that the district court has the prerogative of fashioning a course of proceeding short of a full-blown hearing to avoid the need for such a hearing. *Bracy v. Gramley,* —— U.S. ——, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997);

*Blackledge v. Allison,* 431 U.S. 63, 81, 97 S.Ct. 1621, 1632–33, 52 L.Ed.2d 136 (1977); Porter, 112 F.3d at 1317; *see also Harris v. Nelson,* 394 U.S. 286, 299, 89 S.Ct. 1082, 1090–91, 22 L.Ed.2d 281 (1969). It is firmly established that in order to succeed on a failure to investigate claim, the petitioner must demonstrate what the attorney would have discovered had a proper investigation occurred, as well as what evidence would have been introduced at trial. *See, e.g., United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir.1991); *DeRobertis,* 811 F.2d at 1016. In the case of an uncalled witness, we have held that at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial. *United States v. Kamel,* 965 F.2d 484, 491 (7th Cir.1992); *Ashimi,* 932 F.2d at 650. As a preliminary step, for instance, the district court may deem it advisable to appoint counsel to assist the incarcerated Mr. Wright to contact Foster and to obtain the needed evidentiary submission. Here, Mr. Wright claims that he was unable to obtain an affidavit from Foster because he was incarcerated and did not personally know him.

Finally, we note that Mr. Wright ultimately must establish not only that Foster would have testified in accordance with his statement to the police, but also that his counsel's performance was inadequate. The district court, for purposes of deciding the case in the posture in which it was then presented, assumed deficient performance by counsel. But counsel's inadequacies are not yet proven. Mr. Wright must also shoulder that burden in due course.

### Conclusion

We vacate the district court judgment and remand the case with instructions to the district court to proceed in the manner outlined in this opinion.

VACATED and REMANDED.

---

5. The record contains an affidavit from another witness he claims should have been called during his trial. The district court will have to evaluate

whether Mr. Wright's ability to obtain that affidavit is at all relevant to his failure to obtain one from Foster.