NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2008[*]
Decided July 18, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-1208

TYLER SANDERS,
    *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,
    *Respondent-Appellee*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 07 C 299

Matthew F. Kennelly,
*Judge*.

**O R D E R**

After we affirmed his conviction and 20-year sentence for distributing crack, *see United States v. Sanders*, 149 Fed. App'x 527 (7th Cir. 2005), Tyler Sanders filed a collateral attack under 28 U.S.C. § 2255. The district court denied the motion but granted Sanders a certificate of appealability allowing him to pursue on appeal his claim that trial counsel had been ineffective. We affirm the denial of Sanders's § 2255 motion.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

On July 29, 2003, a government informant named Lisa Mahone called Sanders and asked him for prices for various quantities of "hard" cocaine or crack. The next day, while agents looked on, Mahone met Sanders and gave him $1,250 in exchange for a small plastic bag containing a brown substance. Sanders was arrested several days later and charged with distributing crack in violation of 21 U.S.C. § 841(a)(1). He pleaded not guilty and was represented at trial by two retained attorneys: James W. Reilley and his co-counsel, Mark Sutter. The parties stipulated that the bag Mahone gave to the agents contained 62.7 grams of crack. The defense theory was that Mahone framed Sanders by hiding the crack in her bra, meeting Sanders within view of the agents, and then pretending he had given it to her, all in the hope of securing a reduction in the nine-year sentence her boyfriend was serving for drug crimes.

At trial the government called Mahone and two FBI agents. After acknowledging that she was cooperating with authorities in the hope of benefitting her boyfriend, Mahone testified that on July 29, 2003, she had contacted Sanders and asked for his prices for an eighth and a sixteenth of a kilogram of crack. Mahone testified that Sanders told her he would sell her a sixteenth of a kilogram (about 62.5 grams) for $1,250. Mahone told Sanders she would talk to "friends" to get the money together. Instead, she reported the conversation to the FBI.

The next day Mahone called Sanders again and told him she had the money. They arranged to meet at a carwash. Agents gave Mahone $1,250 and a recording device, patted her down from head to toe, and searched her purse and car. Mahone first drove to the carwash and then, at Sanders's direction, proceeded to a restaurant about three blocks away. Mahone testified that once she and Sanders both had parked in the lot, he approached her car, leaned against the driver's door, and dropped a bag through the open window onto her lap. After she gave him the money, Mahone continued, Sanders talked with her for a few minutes and then left. Mahone met up with the agents, who searched her and her car a second time, and she gave them the drugs and the recording device. Reilley cross-examined Mahone vigorously, exploring her motive for cooperating with the police, confronting her with prior inconsistent statements on several details, and clarifying that the agents had not searched inside Mahone's clothing when they frisked her just before the controlled buy.

Special Agent Michael Culloton testified that he had watched the controlled buy from a distance of about one block. Although he saw Sanders approach Mahone's car and lean in through the window, he could not see Sanders drop the bag into Mahone's lap. On direct examination he testified that Mahone had been searched before she went to meet Sanders, but on cross-examination he conceded that the search of her person was really a "cursory" pat-down. Sutter, not Reilley, handled Culloton's cross-examination. The lawyer

elicited confirmation that neither Mahone nor Sanders had used the words "cocaine" or "crack" in any of their recorded conversations, and he questioned why some conversations were not recorded at all, why the controlled buy was not videotaped, and why Culloton had not used binoculars to watch Mahone and Sanders. Sutter also explored with Culloton the motive Mahone had for cooperating.

Special Agent David Twohig testified that after Sanders was arrested he signed a written confession admitting that on June 30, 2003, he sold "63 grams of crack cocaine" to a woman named Lisa. He also confessed to selling crack to other customers in amounts ranging from 63 to 126 grams. Sutter also cross-examined Twohig, primarily focusing on why Twohig wrote out the statement Sanders signed instead of having Sanders write it himself. The government introduced the written confession, along with several recorded conversations between Mahone and Sanders. The defense did not present any witnesses or evidence. The district court questioned Sanders on the record concerning his decision not to testify; Sanders assured the court that he had freely chosen not to take the stand after discussing the matter with his lawyers.

At sentencing the district court found that Sanders's relevant conduct included between 500 grams and 1.5 kilograms of crack, but that finding had no effect on Sanders's sentence. Because of his prior felony drug conviction, the offense of conviction (irrespective of relevant conduct) carried a mandatory minimum of 20 years' imprisonment, *see* 21 U.S.C. § 841(b)(1)(A)(iii), and that is the sentence the district court imposed. On direct appeal, Sanders challenged the district court's determination that the substance he dealt was crack and not some other form of cocaine base. We rejected that argument. *See Sanders*, 149 Fed. App'x at 529.

In his *pro se* § 2255 motion, Sanders alleged more than a dozen constitutional errors, but most of his claims were barred either because they were presented and resolved on direct appeal, *see, e.g.*, *Peoples v. United States*, 403 F.3d 844, 847, 849 (7th Cir. 2005), or because Sanders had failed to raise them during that proceeding, *see, e.g.*, *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Young v. United States*, 124 F.3d 794, 795-96 (7th Cir. 1997). The district court rejected the remaining claims on the merits without conducting an evidentiary hearing.

Sanders did not submit an affidavit or any other evidence in support of his various claims. Instead, when he applied to the district court for a certificate of appealability, Sanders asserted for the first time that before and during trial he saw Reilley, his lead attorney, taking "powerful pain medication" because he was suffering from a terminal illness. (Reilley died approximately nine months after Sanders's trial ended.) According to Sanders, who put these new allegations into an affidavit, the medication had affected

Reilley's "cognitive functions," making him "very forgetful." Sanders said that Reilley "would or could not" give straight answers to Sanders about his defense. According to the affidavit, Reilley told Sanders that he would interview witnesses and present a defense at trial, but in Sanders's view he did neither. Sanders insisted that, had he known Reilley would not follow through, he would have sought a plea agreement from the government instead of going to trial. Sanders also submitted an affidavit from his mother stating that she had seen Reilley take pain pills on one occasion. Without commenting on these affidavits, the district court granted a certificate of appealability limited to Sanders's claim that Reilley's assistance at trial was ineffective.[1]

In evaluating the denial of Sanders's § 2255 motion, we review the district court's factual findings for clear error, its legal conclusions de novo, and its decision not to hold an evidentiary hearing for abuse of discretion. *See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008); *Galbraith v. United States*, 313 F.3d 1001, 1006, 1009 (7th Cir. 2002). We analyze Sanders's Sixth Amendment ineffective-assistance claim under the framework established in *Strickland v. Washington*, 466 U.S. 668 (1984), asking "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," *id.* at 686. It was up to Sanders to establish that counsel's performance fell below "an objective standard of reasonableness," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694; *see also Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).

In his brief on appeal, Sanders alludes to a number of alleged shortcomings in Reilley's performance (Sutter's performance is never challenged or, indeed, even mentioned). But only two of Sanders's theories are sufficiently developed to warrant consideration. *See* FED. R. APP. P. 28(a)(9); *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Of those two theories, the first is a nonstarter. Sanders argues that Reilley's performance was deficient because he

---

[1] We note that Sanders argues for the first time on appeal that the district court erred when it refused to continue his trial so that he could discharge Reilley and obtain substitute counsel. This argument could have been raised on direct appeal but was not, *see Bousley*, 523 U.S. at 621; *Young*, 124 F.3d at 795-96, was not raised before the district court, *Fischer*, 285 F.3d at 601; *Valenzuela*, 261 F.3d at 700, and is beyond the scope of the certificate of appealability. Accordingly, we decline to review it. We note in passing, however, that even though Sanders asserts that he made the request prior to trial "in open court on the record," we were unable to locate any such request in the trial transcript, and no motion for a continuance or to substitute counsel appears on the district court's docket.

was taking pain medication, was distracted by death and illness in his family, and was angry with Sanders for trying to have him replaced prior to trial. Even if these allegations are true, however, they would not help Sanders overcome the "strong presumption" that Reilley performed reasonably at trial. *See Daniels*, 476 F.3d at 434. Sanders was required to identify *specific* acts or omissions by counsel that caused him prejudice, but these allegations have no apparent link to Reilley's performance. Outside influences such as serious illness or use of medication might *explain* a deficiency, but they do not constitute deficiencies by themselves.

We turn, then, to Sanders's second theory, which does concern an alleged omission by counsel: the failure to interview and call as a witness a woman named "Mickey Marshal." In the district court Sanders asserted that Reilley had refused to interview "readily available defense witnesses," but he did not name any such witnesses or describe the nature of their expected testimony. The district court accordingly rejected Sanders's failure-to-investigate theory for lack of specificity. *See Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997) ("[A]t the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial.").

On appeal Sanders attempts to rectify the lack of specifics by detailing in his brief the testimony that might have been elicited from Marshal. Sanders says that if Reilley had interviewed and called Marshal as a witness, she would have testified that Lisa Mahone bragged to her that she was going to help her boyfriend get out of prison early by setting up Sanders. According to Sanders, Marshal would have testified that Mahone admitted that she never really bought crack from Sanders but instead had hidden the drugs in her bra before meeting with Sanders and simply tricked Sanders into "holding" $1,250 for her.

There are several problems with this theory, any one of which is fatal. To begin, Sanders cannot press a theory here that he did not present to the district court. *See, e.g.*, *Fischer v. United States*, 285 F.3d 596, 600-01 (7th Cir. 2002); *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001). Moreover, Sanders has not provided an affidavit from Marshal, and we will not assume that his attorneys did not try to interview Marshal or that she would have testified as Sanders describes. *See Wright*, 125 F.3d at 1044. Even if we were willing to overlook these problems, Sanders does not explain why he believes that Marshal's testimony would have trumped the other evidence of his guilt (including his signed confession). His sanguine declaration that if Marshal had testified "there would have been a different outcome" at trial is not enough to demonstrate that the failure to call her prejudiced his defense.

Finally, Sanders argues that the district court abused its discretion by denying him an evidentiary hearing on the claims in his § 2255 motion. Sanders correctly notes that a

district court must grant an evidentiary hearing if the movant "alleges facts that, if proven would entitle him to relief," *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994), but the petitioner's factual allegations must be "supported by an affidavit before we will require the additional step of an evidentiary hearing," *Galbraith*, 313 F.3d at 1010; *see Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989) ("Mere unsupported allegations cannot support a petitioner's request for a hearing."). The only theory for which Sanders provided any factual support in the district court was his allegation that prior to and during the trial Reilley was taking pain medication to manage his serious illness, but even that factual support was submitted *after* the district court had already denied his motion. Even if the affidavits had been submitted earlier, they would not have warranted an evidentiary hearing because they do not identify any *specific* instances in which illness or medication compromised Reilley's performance. The district court therefore did not abuse its discretion by declining to conduct an evidentiary hearing.

Accordingly, the district court's denial of Sanders's § 2255 motion is AFFIRMED.