**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Watketa VALENZUELA, Defendant–
Appellant.**

No. 97–2636.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1998.

Decided July 13, 1998.

Rehearing Denied Aug. 3, 1998.

Susan E. Cox, Robert W. Kent, Jr. (argued), Office of United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Peter A. Regulski (argued), Chicago, IL, and Kevin P. Bolger, Kevin R. Bolger & Associates, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A grand jury returned an eight count indictment against Watketa Valenzuela. Count one alleged that he participated in a conspiracy to distribute cocaine and cocaine base; count two charged that he intentionally used minors to distribute these narcotics; and counts three through eight alleged that he distributed cocaine and cocaine base within one thousand feet of a public school. The cocaine base was further identified in count one of the indictment as crack cocaine.

Valenzuela entered an agreement with the Government in which he pled guilty to the first and second counts. At the plea hearing, Valenzuela's counsel confirmed that he told Valenzuela that he was charged with conspiracy to deliver cocaine and "rock" cocaine. *See* Change of Plea Tr. at 8, *United States v. Valenzuela,* No. 96 CR 51 (N.D.Ill. Mar. 10, 1997). Valenzuela then agreed that he understood the charges he faced. Also, during the plea hearing, the Government detailed how the evidence would have shown that Valenzuela was a manager of a drug distribution organization that sold crack and powder cocaine in Chicago. *See id.* at 22. At the end of this description, Valenzuela confirmed that it was correct. At the end of the hearing, the district court accepted the plea agreement. The parties, however, did not reach agreement on the amount of drugs attributable to Valenzuela.

The district court conducted a sentencing hearing to determine Valenzuela's offense level. Two of the primary issues were the amount of cocaine and the type of cocaine attributable to him. The Government presented four categories of evidence to establish that Valenzuela dealt crack cocaine and the amount of crack cocaine he dealt. First, through the testimony of Chicago police officer Thomas Richardson, it presented the results of laboratory tests performed on substances that undercover police officers and an informant purchased from Valenzuela's organization. Of the 61.48 grams obtained during fifteen undercover buys, the laboratory tested 48.60 grams. The laboratory reports identified ten of the fifteen undercover purchases (34.78 of the 48.69 grams tested) as being crack cocaine or cocaine in rock form. Officer Richardson testified that based on his experience as a police officer the finding of "cocaine in rock form" in a laboratory report meant crack cocaine and that different chemists used the terms "crack" and "rock" to mean crack cocaine. For the remaining 13.82 grams, the laboratory reports did not differentiate between crack co-

caine and powder cocaine. These reports simply confirmed the presence of cocaine in the sample.

Second, the Government presented the testimony of police officers involved in the investigation to establish that Valenzuela dealt crack cocaine. Officer Richardson, a twenty-six year veteran of the force and a gang crimes specialist for twenty years, stated that one of his jobs in this investigation was to take the purchased substance from the undercover officers, bring it to the station, inventory it, place it in a sealed narcotics envelope, and carry it by hand to the crime laboratory. After discussing the physical characteristics of crack cocaine and powder cocaine, he testified that he had examined all but one of the packages of suspected cocaine during the course of the undercover investigation. Based on this examination, Officer Richardson stated that all of the substances appeared to be crack cocaine with the exception of two purchases made on August 30, 1991, which totaled .44 grams. Chicago police officer Steven Wilson, one of the undercover officers that purchased cocaine from Valenzuela's organization, also testified. Like Officer Richardson, he was thoroughly familiar with the differences between crack and other forms of cocaine. He confirmed that, to the best of his recollection, the substances he purchased from Valenzuela's organization all appeared to be crack cocaine with the same exception as Officer Richardson stated.

Third, through Officer Wilson, the Government produced transcripts of recorded conversations between Valenzuela, his associates, undercover police officers, and the informant. Officer Wilson explained that drug dealers referred to crack cocaine as "rocks" or "ready" and powder cocaine as "raw." In these conversations, undercover officers and the informant repeatedly asked for "rocks" or "ready" and purchased substances which later were shown to be crack cocaine. These conversations also confirmed that the dealers worked for Valenzuela. Finally, on September 11, 1991, Valenzuela established that he preferred to sell crack and not powder cocaine. According to Valenzuela, he didn't "fuck with raw" because "that shit be tricking one up."

Fourth, the Government used the testimony of the investigating officers to establish the scope of the conspiracy. Officer Wilson's role in the investigation was to observe the narcotics traffic at various times of day and night as well as to purchase cocaine from Valenzuela and his workers. He testified that between August 1991 and February 1992, he and his partner made at least seventy trips to the area to observe narcotics transactions. Officer Wilson stated that they saw six sellers in three locations selling crack cocaine to between thirty-five and forty purchasers during the busiest times and that these transactions occurred throughout the day and night.

In addition to the government's presentation of evidence, Valenzuela's attorney stated during final arguments that "I think we can agree that there was an operation that was going on, that drugs were being sold. And as it was put many times, it's not hard to conceive that over fifty grams of crack cocaine was transferred or dealt with over a seven-month period, so I think that we need not speak about what the bottom end is." *See* Sentencing Tr. Vol. II at 12, *United States v. Valenzuela*, No. 96 CR 51 (N.D. Ill. June 24, 1997). He later repeated that Valenzuela dealt over fifty grams of crack. *See id.*

At the conclusion of the hearing, the sentencing court made its findings. After acknowledging Valenzuela's admission that the conspiracy involved at least fifty grams of crack cocaine, the court stated that it was convinced that the cocaine sold during the undercover investigation was crack cocaine. *See id.* at 24–25. The court based this conclusion on the police officers' testimony, the laboratory reports, and the statements of Valenzuela and his workers in the recorded conversations. *See id.* at 25–26. After applying a mathematical formula to determine that Valenzuela was criminally responsible for 1.5 kilograms of crack cocaine and incorporating other factors not relevant to this appeal, the court sentenced Valenzuela to 360 months' incarceration, 10 years' supervised release, and a $12,000 fine.

■ The focus of Valenzuela's appeal is whether the district court erred in sentencing him based on its conclusion that he dealt crack cocaine and not powder cocaine or another form of cocaine base. Valenzuela does not challenge the amount of drugs attributed to him; he only questions the district court's conclusion that he dealt crack cocaine. Because a district court's determination of the type of drugs involved in an offense is a finding of fact, we review it for clear error. *See United States v. Jarrett,* 133 F.3d 519, 529 (7th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 1688, — L.Ed.2d —— (1998); *United States v. Carter,* 122 F.3d 469, 472 (7th Cir.1997); *United States v. Otis,* 107 F.3d 487, 490 (7th Cir.1997).

Section 2D1.1(c) of the Sentencing Guidelines provides a drug quantity table for sentencing courts to use in determining a defendant's base offense level for drug crimes. One well-established distinction in this table is between powder cocaine and crack cocaine. The Guidelines provide a "100:1 ratio" in calculating a defendant's base offense level for crimes involving crack cocaine in relation to crimes involving powder cocaine. *See* U.S.S.G. 2D1.1(c). Crimes involving 1.5 kilograms or more of crack cocaine receive the same base offense level as crimes involving 150 kilograms or more of cocaine. *See id.;* *United States v. Earnest,* 129 F.3d 906, 915 (7th Cir.1997); *United States v. Adams,* 125 F.3d 586, 590 (7th Cir.1997).

■ Until 1993, however, the sentencing scheme had not been clear with respect to the distinction between crack and cocaine base. Crack is a form of cocaine base. *See United States v. Booker,* 70 F.3d 488, 490–91 (7th Cir.1995) (detailing the scientific definitions of crack, powder cocaine, and cocaine base). The 1993 amendment to the Guidelines added a definition of cocaine base to clarify that the higher base offense levels listed in § 2D1.1 apply only to the crack form of cocaine base. *See* U.S.S.G. § 2D1.1(c) note (D); *see also Earnest,* 129 F.3d at 915; *United States v. Abdul,* 122 F.3d 477, 478–79 (7th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997). That definition states that:

"Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appears in a lumpy, rocklike form. U.S.S.G. § 2D1.1(c) note (D). The Government has the burden of establishing by a preponderance of the evidence that the drug in the offense was in fact crack before a court may rely on the higher base offense levels in § 2D1.1. *See Earnest,* 129 F.3d at 915–17; *Adams,* 125 F.3d at 592; *see also United States v. James,* 78 F.3d 851, 858 (3d Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996). Valenzuela claims the Government only showed that he dealt powder cocaine and cocaine base.

■ Before we address Valenzuela's claim, we turn to the Government's assertion that through his admissions in district court Valenzuela waived his right to challenge on appeal whether he distributed crack cocaine. Waiver is the " 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The right to challenge an issue on appeal is a statutory right which a defendant may waive. *See United States v. Woolley,* 123 F.3d 627, 631–32 (7th Cir.1997); *United States v. Feichtinger,* 105 F.3d 1188, 1190 (7th Cir.1997), *cert. denied,* — U.S. ——, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997). Where a party executes a valid waiver, no error exists for an appellate court to correct. *See Woolley,* 123 F.3d at 631; *United States v. Davis,* 121 F.3d 335, 338 (7th Cir.1997); *United States v. Penny,* 60 F.3d 1257, 1261 (7th Cir.1995).

Though he pled guilty to conspiring to distribute cocaine and cocaine base, Valenzuela never acknowledged the amount of cocaine or crack cocaine for which he was responsible. On June 23, 1997, the district court held a sentencing hearing to determine this issue. After the sentencing hearing, Valenzuela's attorney stated, "I think we can agree that there was an operation that was going on, that drugs were being sold. And as it was put many times, it's not hard to

conceive that over fifty grams of crack cocaine was transferred or dealt with over a seven-month period, so I think that we need not speak about what the bottom end is." *See* Sentencing Tr. Vol. II at 12. He later repeated that Valenzuela dealt over fifty grams of crack. *See id.*

Valenzuela contends that this statement is not a waiver of the issue of whether he dealt crack cocaine. He claims that the district court made comments during the sentencing hearing which led his counsel to conclude that the court did not need to hear further argument on this issue. Thus, he suggests that we cannot fault his counsel for the tactical decision to refrain from antagonizing the court further.

We disagree. Valenzuela's counsel was not careful in making his concession to the court. After strenuously cross-examining the Government's witnesses in an effort to show that the Government could not establish that the cocaine was crack and not another form of cocaine base, Valenzuela conceded that he dealt fifty grams of crack cocaine in one sentence. While his motivation may have been an effort to refrain from antagonizing the court, Valenzuela's counsel did not preserve his right to appeal in making his concession. Preserving this right would not have been hard. All Valenzuela's counsel needed to say is that he rests his argument based on the testimony presented and his cross-examination but would like to retain his right to appeal this issue. Because he did not use any limiting language in his concession, we consider the statement to be an admission that Valenzuela dealt crack cocaine such that he abandoned his right to challenge it on appeal.

■ Even if we consider Valenzuela's counsel's statements as an admission but not a waiver of this issue, we find more than sufficient evidence for the district court to conclude that Valenzuela dealt crack cocaine. Valenzuela admitted as much on three separate occasions: (1) on tape to the undercover officers when he stated that he did not deal in powder cocaine, (2) in person to the district court when he agreed to the Government's description of his crime at the plea hearing, and (3) through his counsel to the

district court at the close of the sentencing hearing. These pieces of evidence when combined with the police officers' observations of the drugs purchased and the testimony about the laboratory results are more than enough for a district court to decide by a preponderance of the evidence that Valenzuela dealt crack cocaine. Valenzuela's general attacks against this evidence are without merit.

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.