In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2167

Watketa Valenzuela,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4596--George M. Marovich, Judge.

Argued February 26, 2001--Decided August 17, 2001


  Before Bauer, Posner, and Kanne, Circuit
Judges.

  Kanne, Circuit Judge.  Watketa
Valenzuela, who was convicted of
conspiring to distribute cocaine and
cocaine base, filed a habeas corpus
petition alleging that he received
ineffective assistance of counsel at
sentencing in violation of the Sixth
Amendment. In his petition, Valenzuela
contends that his attorney failed to
properly challenge the government's
evidence that the controlled substance in
question was crack cocaine rather than
powder cocaine or some other form of
cocaine base. The district court rejected
his petition, and he now appeals. Because
we agree with the district court's
conclusion that Valenzuela failed to meet
both prongs of the Strickland test for
any of his claims, we affirm.

I.  History

  On March 10, 1997, Valenzuela entered
into an agreement with the government to
plead guilty to two counts of an eight-
count indictment. Count one charged that
he conspired to distribute cocaine and
cocaine base in violation of 21 U.S.C.
sec. 846;/1 count two alleged that he
hired and used persons under eighteen
years of age to violate 21 U.S.C.
sec.sec. 841(a)(1) and 846. At the plea
hearing, Valenzuela acknowledged that he

knew that he was charged with conspiracy to deliver cocaine and rock cocaine. The parties did not, however, reach an agreement on the amount of cocaine and cocaine base attributable to Valenzuela.

On June 23, 1997, the district court conducted a sentencing hearing for the purpose of determining the amount of drugs involved in the conspiracy. Because the United States Sentencing Guidelines provide for more severe penalties for crimes involving crack cocaine than for those involving powder cocaine, see United States Sentencing Guidelines Manual sec. 2D1.1(c) (1998), the identity of the controlled substances was also a critical issue at sentencing. The government presented several types of evidence to demonstrate that Valenzuela dealt crack as opposed to powder cocaine including: (1) results of laboratory tests performed on substances purchased from Valenzuela and his associates which identified 34.78 grams of the 48.69 grams tested as crack cocaine or cocaine in rock form; (2) testimony of police officers Thomas Richardson and Steven Wilson, who participated in the investigation of Valenzuela, in which they stated that they were familiar with the differences between crack and powder cocaine and that all of the substances purchased from Valenzuela appeared to be crack cocaine with the exception of two purchases totaling .44 grams; (3) transcripts of recorded conversations in which undercover officers asked dealers who worked for Valenzuela for "rocks" and "ready" and then purchased substances which were later determined to be crack cocaine; and (4) transcripts of a recorded conversation in which Valenzuela said that he didn't "fuck with raw" because "that shit be tricking one up." During final arguments, Valenzuela's attorney conceded that fifty grams of crack cocaine were attributable to Valenzuela but argued that the government had failed to show by a preponderance of the evidence that Valenzuela was responsible for amounts of crack cocaine in excess of fifty grams. Valenzuela's attorney stated, "I think we can agree that there was an operation that was going on, that drugs were being sold. And as it was put many times, it's not hard to conceive that over fifty grams of crack cocaine was transferred or dealt with over a seven-month period, so I

think that we need not speak about what the bottom end is." Tr. of Sentencing H'rg at 12. However, he went on to argue that the government's calculation that Valenzuela was responsible for more than fifty grams was inherently unreliable because the government failed to present photographs, video tapes, or other corroborating evidence establishing the scope of the conspiracy.

After listening to all of the evidence and hearing arguments from both parties, the district court determined that the government had established that the controlled substances at issue consisted mostly of crack cocaine. In announcing his findings, the district judge acknowledged that Valenzuela's attorney had conceded that Valenzuela was responsible for fifty grams of crack. He also stated that:

So I know and I am convinced that we are dealing with crack here. . . . Policemen made hand-to-hand buys that, according to them, resulted in the seizure of 61 grams of crack. At least 40 grams of that substance was both preliminarily tested and confirmed to be crack. Whether you want to be semantically correct about whether they call it rock cocaine or whether they call it crack, I am convinced that that is what it was. And to bolster my conclusion, I look upon other things that I have heard. The police officers who handled it said that it is crack.

. . . I know that cocaine comes in bricks and it might be hard, but you sure as hell can crumble it. I know that you can't do it with a rock.

I know that on the transcripts people are talking about dealing with ready and crack and cooking. We have the words out of Watketa's mouth that that's what he deals with, he doesn't screw around with raw. . . .

We have the testimony of the police officers, we have the transcripts of Watketa, we have the transcript of his workers, and we have the lab reports, not standing alone, but when you put them all together . . . it is my opinion and I am convinced that they are dealing with crack.

Tr. of Sentencing H'rg at 25-26. On the basis of its determination that Valenzuela was responsible for 1.5 kilograms of crack cocaine, the district court imposed a sentence of 360 months imprisonment, ten years supervised release, and a $12,000 fine.

Valenzuela appealed, arguing that the district court erred in finding that he dealt crack cocaine as opposed to powder cocaine or another form of cocaine base. On appeal, the government contended that, by conceding that fifty grams of crack cocaine were attributable to Valenzuela, Valenzuela's attorney had waived Valenzuela's right to challenge the fact that he dealt crack cocaine. See United States v. Valenzuela, 150 F.3d 664, 668 (7th Cir. 1998). We agreed, noting that:

Valenzuela's counsel was not careful in making his concession to the court. After strenuously cross-examining the Government's witnesses in an effort to show that the Government could not establish that the cocaine was crack and not another form of cocaine base, Valenzuela conceded that he dealt fifty grams of crack cocaine in one sentence. While his motivation may have been an effort to refrain from antagonizing the court, Valenzuela's counsel did not preserve his right to appeal in making his concession. Preserving this right would not have been hard. All Valenzuela's counsel needed to say is that he rests his argument based on the testimony presented and his cross-examination but would like to retain his right to appeal this issue. Because he did not use any limiting language in his concession, we consider the statement to be an admission that Valenzuela dealt crack cocaine on appeal such that he abandoned his right to challenge it on appeal.

Id. We went on to clarify that, even if Valenzuela's attorney had not waived the issue, there was sufficient evidence to support the district court's finding that the substance in question was crack cocaine:

Even if we consider Valenzuela's counsel's statements as an admission but not a waiver of this issue, we find more than sufficient evidence for the district court to conclude that Valenzuela dealt

crack cocaine. Valenzuela admitted as much on three separate occasions: (1) on tape to the undercover officers when he stated that he did not deal in powder cocaine, (2) in person to the district court when he agreed to the Government's description of his crime at the plea hearing, and (3) through his counsel to the district court at the close of the sentencing hearing. These pieces of evidence when combined with the police officers' observations of the drugs purchased and the testimony about the laboratory results are more than enough for a district court to decide by a preponderance of the evidence that Valenzuela dealt crack cocaine.

Id.

On July 13, 1999, Valenzuela filed a petition for a writ of habeas corpus, see 28 U.S.C. sec. 2255, in which he asserted that he had been denied effective assistance of counsel at sentencing in violation of the Sixth Amendment. Thedistrict court denied his petition because it found that Valenzuela's attorney's performance was not constitutionally deficient, and even if it was, that Valenzuela had not shown that he was prejudiced by his attorney's alleged errors. He now appeals.

II.  Analysis

Valenzuela contends that his attorney provided ineffective assistance of counsel by: (1) admitting that fifty grams of crack cocaine were attributable to Valenzuela; (2) deciding not to present expert testimony to challenge the identification of the controlled substance as crack cocaine; and (3) failing to argue that the identity of the controlled substance  must be proved beyond a reasonable doubt. We review the district court's findings of fact for clear error and its legal determinations de novo. See Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000).

To show a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's poor performance prejudiced the outcome of the proceedings. See United States v.

Williams, 106 F.3d 1362, 1367 (7th Cir. 1997) (citingStrickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Our examination of an ineffectiveness of counsel claim is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." Id. (quoting Strickland, 466 U.S. at 689). In order to determine whether the defendant has met the performance prong, we "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." United States v. Lindsay, 157 F.3d 532, 535 (7th Cir. 1998). With respect to the prejudice prong, the defendant must "be able to demonstrate that the complained of deficiency resulted in . . . [a] 'reasonable probability' that in the absence of error the result of the proceedings would have been different, and [that the proceeding] was fundamentally unfair or unreliable." Williams v. Washington, 59 F.3d 673, 682 (7th Cir. 1995) (quoting Strickland, 466 U.S. at 694).

A.  Admission that Valenzuela Dealt Crack Cocaine

Valenzuela first argues that his attorney's performance was constitutionally deficient because he waived Valenzuela's right to argue on appeal that the controlled substances at issue were not crack cocaine. Even if Valenzuela is correct that it was objectively unreasonable for his attorney to concede that fifty grams of crack cocaine were attributable to Valenzuela, he still must show that but for his attorney's alleged error, there is a reasonable probability that the outcome of the proceeding would have been different. See United States v. Jackson, 103 F.3d 561, 573 (7th Cir. 1996). In the context of the Strickland test, a reasonable probability of a different result is "a probability sufficient to undermine confidence in the outcome [of the proceeding]." United States v. Balzano, 916 F.2d 1273, 1292 (7th Cir. 1990) (internal quotation omitted).

Valenzuela's argument ignores the

additional evidence at sentencing that suggested that the substances at issue were crack cocaine. As we indicated on direct appeal, there was an abundance of evidence showing that some, if not virtually all of the controlled substances distributed by Valenzuela were crack rather than powder cocaine. Inaddition to the testimony of the police officers involved in the investigation and the lab reports suggesting the presence of "rock" and "crack" cocaine, Valenzuela himself admitted that he distributed crack cocaine on tape to the undercover officers and at his plea hearing when he agreed to the government's description of his crime. Considering the overwhelming amount of evidence that the drugs in question were crack cocaine, we do not think there is a reasonable probability that the outcome of Valenzuela's sentencing hearing would have been different even if his counsel had not conceded that Valenzuela was responsible for fifty grams of crack cocaine. Therefore, because he has not shown that his attorney's concession rendered the sentencing proceeding fundamentally unfair or unreliable, see Williams v. Washington, 59 F.3d 673, 682 (7th Cir. 1995), Valenzuela has not met the prejudice prong of the Strickland test and is not entitled to habeas relief on his first claim.

B. Failure to Present Expert Testimony

Next, Valenzuela alleges that his counsel was deficient because he did not call an expert witness to refute the government's contention that the controlled substances at issue were crack cocaine rather than powder cocaine or another form of cocaine base. At the sentencing hearing, Valenzuela's attorney strenuously cross-examined the government's witnesses to establish the limitations of the police officers' ability to ascertain that the substances in question were actually crack cocaine. Valenzuela asserts that this was not sufficient; he claims that his counsel should have called a chemist to testify that, based on the lab reports as presented at the sentencing hearing, it would not be possible to determine to a scientific certainty that the substances in question were crack cocaine. Unfortunately for Valenzuela, however, "[a] lawyer's decision to call or not to

call a witness is a strategic decision generally not subject to review." United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997); see also United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990) ("The Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record."). Here, Valenzuela's attorney established on cross-examination that: (1) the police officers did not have a background in chemistry; (2) the police officers did not perform the lab tests themselves; (3) many of the lab reports used the term "rock" as opposed to the term "crack" and none of the lab reports state that the cocaine tested positive for crack; and (4) the police reports of the cocaine purchases did not use the term "crack." Given this testimony, we are unsure what, if any, added value the proposed witness would have added. Thus, because Valenzuela has not demonstrated that his counsel's decision not to call a chemist was unreasonable under prevailing professional norms, his second ineffective assistance of counsel claim must fail.

C. Failure to Object to Preponderance of the Evidence Standard

Valenzuela was sentenced prior to the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 434 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. at 490. Valenzuela now argues for the first time that his attorney provided ineffective assistance of counsel by failing to object to the district court's use of a preponderance standard to determine the amount of cocaine and cocaine base./2 By failing to raise this issue in his sec. 2255 petition before the district court, however, Valenzuela has waived it. See Drake v. Clarke, 14 F.3d 351, 355 (7th Cir. 1994). At any rate, this argument is meritless because our cases provide that "[t]he Sixth Amendment does not require

counsel to forecast changes or advances in the law." Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993); see also United States v. Smith, 241 F.3d 546, 548 (7th Cir. 2001) (noting that an ineffective assistance of counsel argument premised on counsel's failure to anticipate Apprendi would be untenable).

## III. Conclusion

For the foregoing reasons, we agree with the district court's determination that Valenzuela has not shown that he was denied the effective assistance of counsel. Therefore, we AFFIRM the district court's denial of petitioner's motion for a writ of habeas corpus.

FOOTNOTES

/1 The cocaine base referred to in count one was additionally identified as the substance "commonly known as crack."

/2 Although Valenzuela frames the issue as one of ineffective assistance of counsel, it appears from his brief that he is actually arguing that the district court erred by using a preponderance of the evidence standard. We previously denied Valenzuela's motion to expand the certificate of appealability to include the Apprendi issue; thus we need not address it here. Valenzuela did not present this argument at trial, on direct appeal, or in the district court in his sec. 2255 motion. Even if Apprendi applies retroactively on collateral review under Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), our cases are clear that the novelty of Apprendi does not constitute cause for failing to raise the issue earlier because "the foundation for Apprendi was laid long before 1992." Garrott v. United States, 238 F.3d 903, 905 (7th Cir. 2001).