**Henry L. MARTIN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 01–C–020, 98–CR–62.**

United States District Court, E.D. Wisconsin.

Sept. 10, 2001.

---

Henry Martin, petitioner pro se.

Rebecca Dallet, Special Assistant U.S. Attorney, Milwaukee, WI, for respondent.

## DECISION AND ORDER

CURRAN, District Judge.

Henry Martin, a prisoner in federal custody, has filed a motion pursuant to 28 U.S.C. § 2255 for relief from his conviction and sentence. Martin was convicted by a jury of bank robbery. The court sentenced him to 62 months of imprisonment, a $4,000.00 fine, and restitution of $1,212.00. His conviction was affirmed by the Seventh Circuit and the United States Supreme Court denied a writ of certiorari. *See United States v. Martin,* 189 F.3d 547 (7th Cir.1999), *cert. denied,* 528 U.S. 1097, 120 S.Ct. 840, 145 L.Ed.2d 705 (2000). He then filed this motion asking for collateral relief. Martin alleges that the attorney who represented him at trial and on appeal was ineffective.[1] After briefing had begun on the motion, Martin successfully moved to amend his motion to add more claims. The government has responded to the amended motion and has denied that Martin is entitled to any relief. The issues raised have been fully briefed.

## I. FACTS

The Court of Appeals for the Seventh Circuit set forth the facts of this case as follows:

At 6:53 p.m., on March 19, 1998, a woman (later identified as Lisa McElwee) entered a Tri City National Bank branch in Brown Deer, Wisconsin and displayed a note which read: "give me your money, not bait," and verbally repeated the command. [FN1] She made off with $1,212, ran into the parking lot, and got into a black car driven by a man. Witnesses testified that the man opened the driver's side door and after she dove into the car over his lap he shut the door, waved to her pursuers, and then sped away. About an hour after the robbery, Henry Martin went to the police and told them that he had been driving in the parking lot near the bank when a woman jumped into his car and forced him to drive her away. The getaway car was his, and to preempt police tracking his license number he presented this carjacking explanation.

FN1. Bait money is real money that tellers keep in their money drawers in case of robbery. The serial numbers of the bills are prerecorded so that the authorities might later determine where the money is spent. Pulling out the bait money also triggers a silent alarm and this money frequently contains a dye capsule which splatters an indelible dye on the money and the thief.

On March 25, 1998, the Milwaukee police arrested McElwee and Martin while they were sitting in Martin's car after purchasing some heroin. When confronted with a photograph from the bank surveillance camera, McElwee admitted that the picture was of her and told the police that Martin was the driver of the getaway car. She related that she had known Martin for seven years, had previously worked with him at the Social Development Commission, and since 1993 she and Martin frequently

---

1. None of the issues raised in this section 2255 motion were raised by Martin or his attorney on direct appeal.

would consume heroin together. When the police showed Martin the surveillance photograph he responded that the robber depicted in it was the woman who hijacked his car, but that McElwee was not that person. Subsequently, a grand jury indicted Martin and McElwee for one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) & 2. McElwee entered into a plea agreement, testified against Martin at his trial, and related how the robbery transpired. On the day of the robbery, Martin picked her up at her house and they went and consumed heroin together. Later, as they were sitting in his car, they hatched their plot after hearing on the radio about a successful bank robbery. McElwee testified that Martin eventually drove her to the bank which she robbed, and that they escaped in his car. They drove to McElwee's mother's house where they counted the money. Martin then told McElwee that he was going to tell the police that a woman shoplifter jumped into his car and forced him to drive away, as he was afraid that someone had seen his license plate. So about an hour after the robbery, Martin went to the police station to report that he had been a victim of a carjacking near the Tri City National Bank. The police immediately doubted his story. They obtained fingerprints from his car which matched those taken during a prior arrest of McElwee. The police then examined a photograph of McElwee from police records and learned that her facial profile matched pictures of the robber taken by the Tri City Bank surveillance cameras.

As the evidence overwhelmingly conflicted with Martin's version of events, he was forced to abandon his initial story and finally admitted at trial that he drove McElwee to the bank, that she robbed the bank, and that the woman who jumped into his car was McElwee.

He also admitted the obvious: he had concocted the carjacking story. Martin denied, however, that he knew McElwee was going to rob the bank and stated that he played no role in planning the robbery and did not receive any of the money.

With his credibility severely damaged, a major part of Martin's defense was that he had no need to rob a bank, as he had been receiving severance pay, his wife had a good job, and he had plenty of art, jewelry, and electronic goods which he could have liquidated.

*United States v. Martin,* 189 F.3d 547, 548–49 (7th Cir.1999), *cert. denied,* 528 U.S. 1097, 120 S.Ct. 840, 145 L.Ed.2d 705 (2000).

Given these facts, the jury found that Martin had participated in the bank robbery. The only issue raised by Martin on direct appeal was whether he was prejudiced as a result of being questioned by the trial court about his finances. The court of appeals affirmed his conviction on the ground that the court had not unfairly prejudiced the Defendant by its attempt to clarify the Defendant's prior testimony which was ambiguous and unclear concerning his motive to rob the bank. *See Id.* at 554–55.

## I. *LEGAL STANDARDS GOVERNING SECTION 2255 MOTIONS*

Section 2255 provides a means of collaterally attacking a conviction or sentence; however, the grounds for the collateral attack are narrowly limited. *See United States v. Addonizio,* 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). A motion under section 2255 will be granted only if the petitioner can show a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill*

*v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1862). Similarly, errors of fact will not provide a basis for relief unless the errors were of the most fundamental character, so as to render the proceeding itself irregular and invalid. *Addonizio,* 442 U.S. at 186, 99 S.Ct. 2235.

The Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A petitioner's failure to raise a particular error either at trial or on direct appeal generally precludes the assertion of that error for the first time in a collateral attack under section 2255. *See United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.), *cert. denied sub nom. McDonnell v. United States,* 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). If a petition is predicated upon information known by the defendant and his counsel at the time of the trial or at a point at which an appeal could have been taken, such knowledge is fatal to a section 2255 claim. *See e.g., Doe v. United States,* 51 F.3d 693 (7th Cir.), *cert. denied,* 516 U.S. 876, 116 S.Ct. 205, 133 L.Ed.2d 139 (1995).

## II. *DEFAULT, CAUSE AND PREJUDICE*

Where, as here, a section 2255 motion rests upon issues not raised at trial or on direct appeal and the government has raised a procedural default defense, the petitioner bears the burden of demonstrating that "cause" excused the procedural default and that "actual prejudice" resulted from the errors at issue.[2] *United*

States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). "[T]he existence of cause for a procedural default must ordinarily turn on whether some objective factor external to the defense impeded counsel's effort to comply with the . . . procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The Supreme Court has explained that:

> Objective factors that constitute cause include "interference by officials" that makes compliance with [the exhaustion requirement] impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." In addition, constitutionally "ineffective assistance of counsel . . . is cause." Attorney error short of ineffective assistance of counsel, however, does not excuse a procedural default.

*McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray,* 477 U.S. at 486–88, 106 S.Ct. 2639). *See also Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir.1994). To establish prejudice, the petitioner must show, not merely that the error created a *possibility* of prejudice, but that the error worked to his *actual* and substantive disadvantage, infecting the proceedings with error of constitutional dimensions. *See Frady,* 456 U.S. at 170, 102 S.Ct. 1584.

## III. *INEFFECTIVE ASSISTANCE OF COUNSEL*

In this case, Martin claims that the cause of his failure to raise the instant issues on appeal was that he was denied effective assistance of counsel at trial and

---

2. The Supreme Court has established a narrow exception to this rule. "[Ii]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a[F]ederal habeas corpus court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). *See also Schlup v. Delo,* 513 U.S. 298, 314–15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The allegations in Martin's petition do not implicate this narrow exception. He has presented no new evidence of actual innocence.

on appeal.[3] A defendant has a Sixth Amendment right to "reasonably effective counsel." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim for ineffective assistance of counsel, a defendant

> [f]irst ... must show that counsel's performance was deficient this requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. To meet this test, a litigant claiming ineffective counsel "must prove both incompetence and prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

The first prong of the *Strickland* test requires a defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. The Supreme Court has stated that:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.... The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. ■ A petitioner can establish the requisite prejudice stemming from ineffective assistance of counsel by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Besides showing a reasonable probability of a different outcome, the petitioner must also show that the deficient performance rendered the proceedings fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 368–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

■ In analyzing a claim of ineffective assistance of counsel, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Courts must "indulge a strong presumption that counsel's challenged conduct falls within the range of reasonable professional assistance." *Id.*

## IV. *DISCUSSION AND DECISION*

In seeking section 2255 relief, Martin, who testified at trial that he has a law degree, cites more than a dozen "errors" committed by his attorney during trial, sentencing and appeal. His theory is that, either individually or cumulatively, the "errors" of his attorney amounted to ineffective assistance. The government's response includes an affidavit of Patrick K. Cafferty, Martin's attorney, in which the attorney explains his tactics. Martin has countered with his own declaration.

■ As a threshold matter, Martin asks for an evidentiary hearing. An evidentiary hearing on a section 2255 motion

---

**3.** Because Martin's trial attorney also represented him on appeal, Martin could not have raised the ineffectiveness of trial counsel issue on direct appeal, so a section 2255 motion is the proper vehicle for such a claim. *See Guinan v. United States,* 6 F.3d 468, 470–71 (7th Cir.1993).

is not mandatory. *See Daniels v. United States,* 54 F.3d 290, 293 (7th Cir.1995). A motion must be "accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Barry v. United States,* 528 F.2d 1094, 1101 (7th Cir.) (footnotes omitted), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir.1989). In this case, Martin's unsupported submissions do not meet these criteria, so his request for a hearing is denied. *See Prewitt v. United States,* 83 F.3d 812 (7th Cir.1996).

## A. TRIAL "ERRORS"

■■■ Martin argues that his attorney was ineffective because, prior to trial, Attorney Cafferty should have moved to suppress statements and evidence taken at the Brown Deer Police Station before Martin was advised of his *Miranda* rights. However, the facts show that Martin was at the police station because he claimed to be the victim of a carjacking. Consequently, *Miranda* "rights" were not implicated.

■■■ At trial, Lisa McElwee testified that she and Martin had given her his glasses as part of her disguise for robbing the bank. Martin says that, in order to prove that the glasses were not his, his attorney should have questioned witness Bernadette Sebion, McElwee's work supervisor, who could have testified that McElwee wore the same glasses every day at work. He also believes that his attorney should have questioned a "Mr. Fox" of the Wisconsin Department of Corrections who had interviewed Martin for a job the day of the robbery. Martin believes that Fox could have testified that Martin was wearing glasses during the interview (and, therefore, would not have had to drive

McElwee to his apartment to get them as McElwee testified) and could have cast doubt on the time frame outlined in McElwee's testimony.

Martin has not produced affidavits from Sebion or Fox. He does not allege that he has contacted them to find out what their testimony would have been, and he does not allege that he was unable to contact them. Therefore, the court cannot give any weight to Martin's speculations about what the two could have established at trial. The government, on the other hand, has produced Attorney Cafferty's affidavit in which he says that his investigator interviewed Sebion and determined that she had no useful information about the glasses. He says that he would have called Fox as a witness only if McElwee had not admitted that Martin had been in Madison on the day of the robbery.

Martin's showing is insufficient to establish what Sebion and Fox would have said at trial, or that, without those answers, the outcome of the trial would have been different. Therefore, his attorney cannot be called "ineffective" for his failure to question Sebion about the glasses or to call Fox as a witness. Likewise, Martin's conclusory charge that Cafferty failed to call three unidentified witnesses to testify about Martin's finances cannot be called ineffective on the basis of this record. *See Valenzuela v. United States,* 261 F.3d 694 (7th Cir.2001) (an attorney's decision to call or not to call a witness is a strategic decision generally not subject to review in connection with ineffective assistance of counsel claim).

■■■ The remaining trial "errors" complained of by Martin—that his attorney failed to investigate and interview witnesses; that FBI Agent Matt Gibson was allowed to make prejudicial comments during his testimony without objection and that Attorney Cafferty failed to object to

improper closing arguments—are too conclusory and insubstantial to merit further discussion and lend no support to his theory that Attorney Cafferty's representation was deficient.

## B. SENTENCING "ERRORS"

Next, Martin argues that, at sentencing, his attorney should have anticipated the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) by insisting that the Sentencing Guidelines enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, be found by the jury beyond a reasonable doubt. In *Apprendi,* the Supreme Court held that factual findings that raise a defendant's sentence above the statutory maximum for the crime for which he is convicted must be considered elements of the offense rather than sentencing factors, and accordingly must be charged in the indictment and proved at trial beyond a reasonable doubt.

 Martin was sentenced to sixty-two months of imprisonment. He was not sentenced to the twenty-year statutory maximum. *See* 18 U.S.C. § 2113(a). Therefore, because Martin's sentence did not exceed the statutory maximum, *Apprendi* does not apply. *Apprendi* refers to the maximum penalty allowed by the statute of conviction and not the top of the guidelines range prior to any adjustments. *See United States v. Behrman,* 235 F.3d 1049, 1054 (7th Cir.2000) ("*Apprendi* does not affect the operation of the Sentencing Guidelines; it is limited to situations in which findings affect statutory maximum punishment.").

 The Seventh Circuit has not applied *Apprendi* retroactively on collateral review; but, even if it can be applied retroactively, Martin's claim that his counsel should have anticipated *Apprendi* is untenable. *See Valenzuela v. United States,* 2001 WL 930217 (7th Cir. August

17, 2001) (No. 00–2167); *United States v. Smith,* 241 F.3d 546, 548 (7th Cir.2001). "The Sixth Amendment does not require counsel to forecast changes or advances in the law." *Lilly v. Gilmore,* 988 F.2d 783, 786 (7th Cir.), *cert. denied,* 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993). Accordingly, Martin has not shown that he was denied effective assistance of counsel at sentencing.

## C. APPEAL "ERRORS"

Finally, Martin asserts that his attorney should have raised all the aforementioned issues on appeal and that he should also have raised the issue of prosecutorial misconduct. Martin says that, during the trial, the prosecutor insinuated that Martin had used McElwee to buy heroin and had induced her to change a donor's chart at the blood bank where she worked so that an ineligible person could donate blood, then split the fee with Martin. In addition, he says that the prosecutor improperly bolstered the credibility of a witness, FBI Agent Mark Crider, by eliciting testimony that he had been a military fighter pilot and, therefore, was observant.

 When evaluating whether a prosecutor's comments denied a defendant a fair trial, the remarks must first be looked at in isolation to determine whether they stayed within proper bounds. *See United States v. Cotnam,* 88 F.3d 487, 498 (7th Cir.), *cert. denied,* 519 U.S. 942, 117 S.Ct. 326, 136 L.Ed.2d 240 (1996). If not, the next step in the analysis depends upon whether the impropriety violated one of the defendant's specific trial rights, such as the Fifth Amendment right against self-incrimination, or whether it reflected more general prosecutorial misconduct, such as vouching for the credibility of a witness or misstating evidence, which could deprive the defendant of his due process right to a fair trial. *See Id.* If the defendant's chal-

lenge is to general prosecutorial misconduct, then, after determining that the remarks were improper, the court should consider the remarks in light of the entire record to determine if the defendant was deprived of a fair trial; that is, the court should determine "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). If the improper remarks violated a specific trial right, then a more stringent standard of review applies. In such a case, the court may hold the error harmless and uphold the conviction only if the government proves beyond a reasonable doubt that the defendant would have been convicted absent the unconstitutional prosecutorial comments. *See Cotnam*, 88 F.3d at 500. *See also generally Whitehead v. Cowan*, 263 F.3d 708 (7th Cir.2001); *United States v. Mietus*, 237 F.3d 866 (7th Cir.2001).

 In this case, where the evidence against Martin was strong, he has not pointed to any specific trial right that the prosecutor's comments allegedly violated. Moreover, the court finds that none of the comments mentioned were improper. Therefore, this inquiry is at an end, and the court concludes that Martin's attorney was not ineffective for not preserving and appealing the issue of prosecutorial misconduct.

### ORDER

For these reasons, the court **ORDERS** that Henry Martin's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (filed January 10, 2001) **IS DENIED.**

**IT IS FURTHER ORDERED** that Martin's "Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" (filed April 20, 2001) **IS DENIED.**

**IT IS FURTHER ORDERED** that this action is dismissed upon its merits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter a final judgment as a separate document. *See* Federal Rule of Civil Procedure 58. This judgment shall provide that:

Petitioner Henry Martin's petition for relief pursuant to 28 U.S .C. § 2255 came before the court the Honorable Thomas J. Curran, District Judge, presiding, and, relief having been denied, IT IS ORDERED AND ADJUDGED that this action is dismissed upon its merits.